### The People v. Thomas Foley.

*Criminal law—Homicide—Evidence—Hypothetical questions—Written statement of respondent—Requests to charge.*

Respondent was convicted of the murder of *one* of his *twin* children, *both* of whom were well and healthy on the evening before their death, and were placed in the same crib by the mother, who, with the respondent and the children, were the *sole* occupants of the house that night. In the morning respondent arose first, and the children were found to be dead, having evidently been killed by violence, their faces being bloody, skulls crushed, and blood issuing from the nose and mouth of each. A *post mortem* examination was had, and respondent arrested for the murder of the *larger* child. On the trial the prosecution proceeded on the theory that respondent left his bed during the night, and killed the infants by crushing their heads and compressing their mouths

and nostrils until strangulation became complete and life extinct. No explanation was given by respondent of the death of the children, he not being sworn, but making a statement to the prosecuting attorney, which was introduced in evidence by the people, in which he did not deny the homicide, except inferentially. A careful examination of the opinion being essential to a correct understanding of the points decided, they will be only suggested as follows:

1. There was no error in permitting certain hypothetical questions to be put to the physicians, the facts assumed as a basis therefor being fully supported by the testimony given, and the questions being relevant and competent.

2. Answers to hypothetical questions, and the weight given to them by the jury, are dependent upon the jury's finding the *facts* assumed in such questions to be *true*.

3. Under the testimony in this case, it was competent for the prosecution to give testimony tending to show that the *smaller* infant was killed on the same occasion as the *larger* one, for whose murder respondent was tried, that it was a part of the same transaction, and that the circumstances of such killing were the same (see opinion p. 157).

4. Where the *purpose* of counsel in offering certain testimony proves not to be the true one, but the testimony is admissible on other grounds, its admission is not error, if given the proper direction by the charge.

5. Where a respondent is charged with the murder of his infant child, his statements and language concerning the deceased, tending to show his motives and the *inducement* to the alleged act, are *competent* evidence against him.

6. Where the statements of the wife of a respondent on trial for the murder of his child, made in his presence immediately after the discovery of its death, and at the house where it occurred, regarding the manner of such death, which statements were necessary to a full understanding of what was said by the respondent, were admitted in evidence, the wife not being sworn,—

   *Held*, not an encroachment on the statute prohibiting a wife from testifying against her husband, the facts queried after being a part of the *res gestœ*.

7. Where a respondent made a *written* statement to the prosecuting attorney regarding the alleged murder of his child, he and his wife, who was not sworn, being the only persons having an opportunity of knowing all the facts connected with the tragedy, and a full examination of the manner in which the statement was obtained showing no undue influence in its procurement, the

disclosures made upon the subject being uncontradicted,—

*Held*, that under the circumstances it was admissible on the trial, on the part of the prosecution.

8. On a trial for homicide the respondent requested the court to charge the jury that, "to warrant a conviction, the circumstances ought fully to preclude all possibility that any other person could have committed the crime."

*Held*, properly refused.

9. On a trial for homicide the respondent's counsel requested the court to charge the jury that "the circumstances may create a *probable* ground for presuming guilt; but each and every circumstance, severally or united, are no more than *inconclusive* probabilities, and do not warrant conviction."

*Held*, that the request substantially required the court to direct the verdict of the jury, and was properly refused.

Error to Clinton. (Smith, J.) Argued October 27, 1886. Decided January 13, 1887.

Information for murder. Conviction affirmed. The facts are stated in the opinion.

*S. B. Daboll* (*Isaac Marston*, of counsel), for respondent. *Moses Taggart*, Attorney General, for the People.

SHERWOOD, J. This case was an information for the murder of an infant child, about two and one-half months old, during the night of the eleventh day of June, 1885, at Lebanon, in the county of Clinton.

The respondent is the father of the child alleged to have been murdered.

The testimony in the case tends to show that the child was well and healthy on the evening before it died; that on that night the respondent and his wife went to bed about 10 o'clock,—first, however, putting the child in question, and its twin brother, in the crib together, which stood in front of the bed, and about eight inches therefrom; that Mrs. Foley slept upon the front side of the bed, and the respondent on the back side, and which was next to the wall; that no one but respondent and his wife and the twin children stayed in

the house that night, the house being locked up before respondent and his wife retired; that the respondent arose first in the morning; that it was then about 6 o'clock; that he went to the crib, found the children lying as placed the night before, and both were dead; that there was no evidence of the house having been entered by other persons during the night, but the children's persons bore evidence of personal violence, and, when first discovered in the morning, their faces were bloody,—the blood proceeding from the nose and mouth of each child. Their skulls had also apparently been crushed.

After the children had been buried four days, the bodies were disinterred, and a *post mortem* examination had. About this time the respondent was arrested, charged with the crime of murdering the child whose name was Edward Foley, and described in the testimony as the larger of the twins.

Upon the trial of the cause it was the theory of the prosecution that some time in the night of the terrible tragedy the respondent left his bed, went to the crib containing the infants, and there killed them both by crushing their heads and compressing their mouths and nostrils until strangulation became complete and life extinct.

The respondent pleaded not guilty to the information; but, if he had any theory by whom or in what manner the death of the child Edward was caused, it is not apparent in the record. He was not sworn upon the trial, but gave his statement of the transaction to the prosecuting attorney, which was put in evidence, the substance of all of which appears in the record. Nowhere in this evidence, however, does he, except inferentially, deny the commission of the homicide; and, while he intimates the child died from natural causes, the mother had the impression some one had "murdered her baby boys."

The cause was tried in the Clinton circuit, and the jury

found the respondent guilty of murder in the second degree. The court sentenced him to imprisonment during life. His counsel now ask a review of the case in this Court. Seventeen errors are assigned.

The seventeenth assignment of error is based upon the defendant's fourth request to charge the jury that—

"The circumstances may create a probable ground for presuming guilt; but each and every circumstance, severally or united, are no more than inconclusive probabilities, and do not warrant conviction."

This, substantially, would require the court to direct the verdict of the jury.

There were several medical men examined as experts. Their testimony was clear and intelligent, and to the effect that the death of the child Edward was caused by external violence, resulting in asphyxiation and injury to the brain. The fact that the children were killed by some one was not much contested upon the evidence.

There were circumstances testified to, and not controverted by the defendant, strongly tending to establish the charge made against the respondent, and we think the sufficiency of the proof was properly submitted to the jury, and the court was correct in so ruling.

The first and second assignments of error relate to hypothetical questions put to Dr. Topping, based on the following *assumed* state of facts:

"An infant healthy and all right in every respect at birth, and, at the age of eleven weeks, in good health seemingly; all right during the day, and as late as between 4 and 5 o'clock P.M.; seen about 6 A.M. the next morning dead, with back, neck, bowels, and hands warm, blood running out of nose, temples purple, back of one shoulder purple, lips purple, one-fourth of the head on right side pushed in deeper than rest of head, and left side sunken in somewhat, blood on the mouth and nose, and on the clothes around the neck, and, on washing head about an hour later, the sunken places felt to give in under the hand; and, upon *post mortem* made on

the fifth day after death, and fourth after interment, found as follows: The external appearance of the child showing decomposition commenced; whole of body discolored; head and face swollen considerable; frothy, bloody matter oozing from mouth and nose; hands deflecting; quite a quantity of fluid beneath the scalp, particularly on the top and right side, and the free border of the right parietal bone resting over frontal; right eye protruding half its width; on opening the scalp, a sero-sanguineous fluid spouting out; tissues around and over the right ear somewhat thickened, and partly discolored; skull, on being denuded, showing right parietal bone detached, and overlapping frontal one-half inch or more, the suture being broke apart so that the scalpel was passed in without touching the adjacent parts, some of the serrated edges broken off, and the anterior inferior corner of the right parietal bone also broken off; left side parietal bone overlapping parietal, giving head appearance of being twisted; suture between the parietal and temporal bones on right side broken; membranes of brain all healthy, with no injury or discoloration; congestion, but blood-vessels not broken; brain in a semi-solid condition, with no extra vacations of blood or ruptured blood-vessels in it; thoracic and abdominal viscera all healthy, but congested; heart in a natural condition; that there was some dark blood in its cavities, being a little more on the right side than left; blood in the great blood-vessels not congested; lungs in an emphysematous condition, and with dark, purplish spots on them under the pleura; larynx and trachea and bronchia healthy, but congested, no obstruction to them, and containing some mucous or frothy fluid; child well nourished; quite an amount of adipose tissue, and no wasting away of tissues."

After such statement the following questions were asked:

"1. What, in your opinion, caused the death of the child?"

"2. In your opinion, is there any disease which would produce death accompanied by conditions stated [which were repeated]?"

These questions were objected to on the following grounds, as stated by respondent's counsel:

"1. That the *post mortem* examination by Gillam and Weller was made without any notice to the father of Edward, the accused.

"2. The *post mortem* examination of Edward Foley was made without giving Thomas Foley, the father of Edward Foley, notice to be present.

"3. That said *post mortem* was not made in accordance with the statutes of this State, and in violation thereof.

"4. That there was no inquest held over the body of Edward Foley.

"5. That the testimony of Drs. Gillam and Weller, at that time, showed that an autopsy was not made upon all the parts of the body, and was irregular and invalid.

"6. That the hypothetical question does not take into account all the conditions of the body, as testified to by the witnesses when they came there on the morning, and immediately after the night when they claim the death occurred; further, that it is not in accordance with the testimony of Dr. Gillam given in the case, or with his examination reduced to writing and filed in the case, and made a part of the original examination."

The objection was overruled by the court, and the doctor was allowed to answer the questions.

To the first question he answered:

"I would give it as my opinion that the child died from asphyxiation, or from the form of it denominated suffocation, aided by extensive injury of the brain."

And to the second question he answered:

"I know of no disease which would produce death with those symptoms."

He also testified that, in his opinion, the injury to the head was "made before death."

We are unable to discover any error in allowing these questions to be put, and in receiving the answers given. The facts contained in the hypothesis were fully supported in the testimony given, and the questions were both relevant and competent. The learning and ability of the physician were unquestioned.

I fully agree with the counsel for the respondent in this case that the expert testimony of physicians was of very great importance, and that the answers to the hypothetical

questions asked, and the weight given them by the jury, were dependent upon the jury's finding the facts assumed in the question to be true. The charge of the court was full and faultless upon this subject; but, notwithstanding the care and circumspection of the court exercised upon this point, it is possible, as suggested by counsel, that the jury found difficulty in determining what facts were derived from the *post mortem* of Edward, as distinguished from those in the case of the other child, and which were contained in the hypothetical questions.

The testimony shows, I think, that the circumstances of the death, and the manner in which it was accomplished, were so nearly the same in the case of both infants that the respondent could not have been prejudiced in the case from the cause suggested. The jury found that the child Edward did not die a natural death, but was feloniously killed; and, if such was the fact, I think there can be no question upon this record but that the other child came to his death on the same occasion, by the same hand, and in the same manner. However this may be, I know of no reason, nor is any made to appear in this record, why the jury in this case, under the clear and impartial charge given by the court, were not capable of discriminating as to what facts related to Edward and what to the other child.

In regard to the testimony relating to the other child, the circuit judge charged the jury as follows:

"And here, gentlemen, I call your attention to some evidence in the case as to the appearance, the morning of the eleventh, of the other child, and also as to the *post mortem* examination of the body of the other child. That evidence is not in this case for the purpose of showing that the respondent is guilty of another crime; for, if he was, it should have no weight in this case. He is not to be convicted of this crime charged because he might possibly be guilty of another. You should be careful not to consider it in that connection. But it was received because you might conclude that, if there was violence to the other, there was violence to

this,—was a part of one and the same transaction.   If it was not a part of the same transaction, if the other child did not receive the injuries which the evidence it is claimed discloses, then that evidence as to the other child should not be considered,—neither the appearance of the other child on the morning of the eleventh, nor what was found as to the body of the other child at the *post mortem* examination; but if it was a part of the same transaction, then all that occurred there would be part and parcel of a connected cluster of events, which would reciprocally serve to color and characterize each other, and are properly to be considered in order to judge correctly as to the quality of the act done."

In regard to the expert testimony, the court further charged the jury:

"Bearing upon this question, as to how that child came to his death, or what was the cause of it, certain physicians have been called as experts.   They are called to testify, not because they were present, and witnessed any facts which they came here to tell you about, but because they are supposed to have given this particular branch of science more study than you or I, or the attorneys, and hence they come here to give you their judgment, based upon certain facts which are supposed to be proven from the evidence; and, upon that statement of those facts, they give you their opinion or their judgment.

"Now, gentlemen, that evidence, in the end, is subject to your supervision and to your judgment.   They give you their opinion, as I have said before, upon a supposed state of facts, —supposing certain things to exist as shown from the evidence.   Now, it becomes important for the jury, just as far as you can, to look into the evidence, and determine whether the facts which are supposed to exist in the hypothetical question that is asked of the doctors do actually exist,— whether there is any evidence upon which to base them in this case, and whether the facts supposed to exist be true or not; because if one fact supposed to be true, included in the question, is untrue, not supported by the evidence, then the opinion of the doctor would be valueless.   He gives his opinion upon a certain state of facts supposed to be true, and we don't know what his opinion would be if one of those facts were withdrawn."

Under the testimony in the case, and the charges above

quoted, I do not think the respondent's first and second assignments of error can be sustained.

The fourth, fifth, thirteenth, and fourteenth assignments of error may be considered together. They all raise the question whether it was competent for the prosecution to give testimony tending to show that the. smaller infant was killed on the same occasion as the killing of Edward,—was a part of the same transaction,—and that the circumstances of such killing were the same.

In this case it was impossible, as appears by the record, to give the circumstances surrounding and connected with the death of Edward except with those connected with the death of the other child. They both lay in the. same crib, in the same room; died the same night, between 10 o'clock in the evening and 6 o'clock in the morning; both were found dead in the same place in which they had been placed in the evening, and at the same time; upon both were found the same marks of violence, which, in the opinions of the several physicians, produced death; and all the statements made by the respondent and his wife (the only persons in the house that night except the infants) concerning the death of Edward related to both children, and, so far as can be discovered from the statements, acts, and feelings of the respondent, he had the same motives for killing the one as the other of these children. I have been unable to find any authority for sustaining these several assignments of error under the circumstances appearing upon this record; and, if any can be found, I am free to say it could never receive my assent.

If any of the testimony offered was admissible, and admitted, although the purpose announced by counsel for which it was offered was not the true ground of its admission, it would make no difference, provided the proper direction was given in the charge; and this I think was sufficiently done in this case, so far as the point is made by responden.'s counsel. The several objections contained in these assign-

ments of error were properly overruled, and the testimony was properly admitted. *People v. Marble*, 38 Mich. 120; *State v. Lapage*, 2 Amer. Crim. Rep. 506, 568, 581, 582; Roscoe, Crim. Ev. 91; *Rex v. Geering*, 18 Law J. Mag. Cas. (N. S.) 216.

Any facts tending to prove the main facts, and cotemporaneous to and connected with them, are admissible, as a general rule. 1 Greenl. Ev. § 108; 1 Whart. Crim. Law, §§ 648, 649; *People v. Mead*, 50 Mich. 228; *People v. Doyle*, 21 Id. 221; *Coleman v. People*, 58 N. Y. 555; 1 Bish. Crim. Proc. § 1125; *Heath v. Com.*, 1 Rob. (Va.) 735; *Haskins v. People*, 16 N. Y. 344.

The people's case was largely made up of circumstantial evidence. The objections taken to the testimony of statements made and language used by the respondent relating to these infant children, tending to show his motives and inducement in putting them away, I think cannot be sustained. · These statements were all competent, and much of this testimony I regard as very significant.

The objection to the testimony of Mrs. Rice was not well taken. The evidence was competent. The testimony referred to the respondent's conduct and statement immediately after the discovery of the death of the children, and at the house where it occurred. It was the statements of the wife, in the presence of the respondent, in regard to the manner of the children's death, and appears to have been necessary to a full understanding of what was said by the respondent; and in such case the rule sought to be applied, that the wife cannot testify against the husband, who is the respondent, is not encroached. The wife was not sworn in the case, and the facts queried after were a part of the *res gestæ*.

I see no error in allowing the written statement of the respondent in evidence. The record discloses no undue influence used in obtaining it; and the statement was given by one of the two persons only who had the opportunity to

know all the facts connected with the tragedy when the homicide actually occurred. A full examination of the manner in which it was obtained by the public prosecutor was gone into before it was received; and the disclosures made upon the subject, and the testimony given, were not contradicted, and, under the circumstances, it must be held admissible. Roscoe, Crim. Ev. 52, 53; *Wright* v. *State,* 1 Amer. Crim. Rep. 191.

Counsel for respondent requested the court to charge the jury as follows:

"2. To warrant a conviction, the circumstances proved ought fully to exclude all possibility that any other person could have committed the crime.

"3. The proof in this case consists of circumstances, but, taken severally or united, they do not exclude the hypothesis that some other person might be guilty of the murder; and, if they do not, the prisoner ought not to be convicted."

I do not understand the first of these requests to state the law correctly. If this statement of the law is correct, it would be impossible to convict unless the circumstances were such as to exclude all possibility that any other person could have committed the crime.

The third request embodies the same doctrine as the second, and then asks the court to direct a verdict for the respondent.

Upon the subjects contained in these two requests the court charged the jury:

"It is necessary for the prosecution to show, under all circumstances, as a part of their own case, that there is no innocent theory possible which will, without violation of reason, accord with the facts proven in the case. Circumstances are never to be presumed. Each fact making up the chain of circumstances must be proven beyond a reasonable doubt; and, if the prosecution fails to prove any one link making up the chain of circumstances, the prisoner ought not to be convicted."

And following such charge the court said that—

"Each link must be proven beyond a reasonable doubt.

Circumstantial evidence is sufficient, and is often more persuasive to convince the mind of the existence of a fact than the positive evidence of a witness, who may be mistaken; whereas a concatenation and a fitness of many circumstances, made out by different witnesses, can seldom be mistaken or fail to elicit the truth. But then those circumstances should be strong in themselves, should each of them tend to throw light upon and prove each other, and the result of the whole should be to leave no doubt upon the mind that the offense has been committed, and that the accused, and no other, could be the person who committed it."

I think this charge gave the respondent the full benefit of the rule established by all the decisions.

After a careful review of this case I have not been able to discover any error committed on the trial in the circuit, and the judgment should be affirmed.

The other Justices concurred.