PEOPLE *v.* SMITH.

1. CRIMINAL LAW—LIMITATION OF ARGUMENT TO JURY—WAIVER OF ERROR.

Trial judge's limitation of argument to jury in trial of criminal action for assault and battery to 15 minutes to a side and stopping defendant's attorney after 20 minutes of argument at close of trial lasting 2 days, notwithstanding court rule provision that each side should "be allowed at least 1/2 hour if it is desired," constituted error, and such error was not waived under the circumstances, by failure of defense counsel to object to limitation at time it was announced (Court Rule No 37, § 3 [1945]).

2. SAME—COMMENT ON TESTIMONY—COMPARATIVE CHARACTERIZATION OF DEFENDANT AND COMPLAINING WITNESS.

Cross examination by trial court of defendant, charged with assault and battery, and trial judge's charge to jury *held,* prejudicial error effecting a denial of a fair trial, where such action by the trial judge did not merely involve a comment on testimony but extended to characterization of the complaining witness, father-in-law of 1 of the 2 defendants, whereby the former was depicted as a law-abiding citizen who did only what he had a right to do and the defendant son-in-law was not of like character.

3. SAME—PREJUDICIAL ERRORS—FAIR TRIAL.

Whether or not errors committed during the course of the trial of a criminal case are sufficiently prejudicial to require the setting aside of convictions and the granting of a new trial is tested by whether or not the defendant has had a fair trial in the ordinary acceptance of that term.

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 461.
[2] 53 Am Jur, Trial §§ 76, 78.
[3] 14 Am Jur, Criminal Law § 129.

Appeal from Saginaw; O'Neill (James E.), J. Submitted January 12, 1961. (Docket No. 66, Calendar No. 48,477.) Decided April 26, 1961.

Alfred Smith and James Wade were convicted of assault and battery. Reversed and remanded.

Paul L. Adams, Attorney General, Samuel J. Torina, Solicitor General, and Maurice L. van Benschoten, Special Prosecutor, for the people.

Moskal & McDonald, for defendants.

CARR, J. Defendants were charged in Saginaw county with the offense of assault and battery committed on the person of one Ernest Schuler on August 15, 1958. They were convicted in the municipal court of the city of Saginaw where they were tried before the judge of said court without a jury. They appealed to the circuit court of the county, and on jury trial were represented by counsel.

Verdict was returned finding both defendants guilty as charged, and on February 13, 1959, they were placed on probation for a period of 18 months from and after the date of the order which provided, in addition to the usual statutory conditions, that each should pay a fine of $50 and make restitution in the sum of $107.62. The court further reserved the right to require each defendant to be imprisoned in the county jail or in the Detroit House of Correction for not more than 6 months as a condition of probation, such imprisonment to be served at such time, or intervals, as the court in its discretion might require, subject, however, to the provision that the aggregate jail term should not exceed the maximum period of imprisonment which might have been imposed by law for the offense.

On leave granted defendants have appealed to this Court, claiming that in the course of their trial in circuit court prejudicial errors occurred of such nature as to entitle them to a new trial. In their behalf such a motion was made before the trial judge and was denied. The testimony in the case was conflicting. The complaining witness, Ernest Schuler, was the father-in-law of defendant Smith, and apparently there had been some unfriendly feelings between them. The offense in question was charged as committed at a certain tavern within the county to which Mr. Schuler went late in the afternoon. According to his testimony he did some drinking there. During the evening he noticed the defendants sitting together at a table, and directed the bartender to give them drinks. Defendants refused the proffered hospitality. Later Schuler went to their table and some conversation occurred, apparently not of a friendly nature.

The complaining witness testified that the defendants cursed him and, in turn, they claimed, as witnesses in their own behalf, that Schuler called them vile names. Thereafter the parties left the tavern and an affray occurred outside, defendants asserting that Schuler had swung at Smith with a beer bottle and that the latter had struck Schuler and knocked him down, while Schuler asserted that defendants were responsible for initiating the attack on him. The claims of defendants were corroborated to a certain extent by 2 eyewitnesses in their behalf. Schuler was the sole witness for the prosecution as to the alleged assault.

Defendants' first claim of error is predicated on the action of the trial judge in limiting the length of argument to the jury. Apparently following the closing of the proofs the judge stated that counsel might have 15 minutes on a side. Counsel for defendants was interrupted at the end of 15 minutes

of argument, and after an additional 5 minutes was required to stop his address to the jury. At the time counsel protested that he was not able to finish, and it is now insisted that the action of the judge in enforcing the limitation constituted prejudicial error in view of the provision of circuit Court Rule No 37, § 3 (1945), declaring that:

"Counsel upon either side shall be allowed at least 1/2 hour if it is desired."

Such provision is subject to local rule, if any, governing the disposition of so-called short causes, but it does not appear that there was such rule in the Saginaw circuit.

That the action of the trial court was taken in disregard of the court rule is not open to question. It may be noted in passing that the trial continued for approximately 2 days, and apparently was vigorously contested on both sides. On behalf of the people it is claimed that defendants' counsel waived the right to object to the limitation of argument by failing to protest when the judge indicated that each side would be allowed but 15 minutes for argument. Obviously, however, counsel for defendants was not in position to determine what matters he would be compelled to argue, or the length of time necessary therefor, until the prosecuting attorney had made his opening argument to the jury. We are not impressed that the prosecution's claim of waiver is well-founded. The obvious fact remains that the court rule was not observed, and that counsel for defendants was deprived of the privilege thereby granted. A similar question was involved in *Harrison* v. *Howe,* 109 Mich 476, where the trial court limited the argument to 10 minutes on a side, which was materially less than the time permitted by the court rule then in force. In passing on the matter, it was said (p 480):

"The court was in error in limiting the argument to 10 minutes on a side."

We think a like conclusion must follow in the case at bar.

Defendant Smith, in testifying in his own behalf on the trial, indicated on his cross examination by counsel for the people that his father-in-law had caused him trouble and that he did not want anything to do with him. Thereupon the trial judge intervened in the cross examination, and the following occurred:

"*The Court:* What trouble did this man cause you? (Directed to witness.)
"*A.* He had me arrested 3 times.
"*The Court:* You didn't marry this girl, who was in a family way, did you, until after you had talked with the prosecutor's office?
"*A.* No, sir.
"*The Court:* You say that is causing trouble?
"*A.* Well, it is trouble.
"*The Court:* She was pregnant, wasn't she?
"*A.* Yes, sir.
"*The Court:* Weren't you the guy?
"*A.* It appears to be that way.
"*The Court:* You call that trouble? He didn't have a right to see about his daughter getting married?
"*A.* (No response.)
"*The Court:* Eh?
"*A.* Yes.
"*The Court:* That caused trouble for you?
"*A.* Yes.
"*The Court:* How about trouble for him?
"*A.* I told him I would marry her.
"*The Court:* When?
"*A.* After the baby was born.
"*The Court:* They don't usually do that, do they?
"*A.* Not too often.

"*The Court:* Sometimes, because of that, they bring out a shotgun. Did you ever hear anything about that?

"*A.* Yes.

"*The Court:* If he had wanted to cause you trouble, he could have got a shotgun, but, instead, he went to the prosecutor's office. I don't know what your idea of the law is, but he abided by the law. He was doing what the law says he has a right to do, and you were not doing what the law says you should do. Get that straight, witness, in connection with your idea that he was causing you trouble. That was the first time?

"*A.* Yes, sir.

"*By Mr. McDonald:* The testimony of the girl—

"*The Court:* The testimony by the witness is, he says he was down in August.

"*By Mr. McDonald:* The girl said, Your Honor, he said he would marry her. It was her father's idea to go to the prosecutor, and that's the trouble the witness has referred to. I don't like the jury to get the wrong impression. The girl—

"*The Court:* The only thing is, I want the jury to understand so far as causing this man any trouble is concerned, about the daughter who was pregnant at that time, the father acted within his rights in going to see the prosecutor to get something done about the father of the child his daughter was carrying. That's the law.

"*By Mr. McDonald:* But those weren't the facts.

"*The Court:* That is the law. He said the man made trouble for him. I want the jury to understand, if that was the kind of trouble he was making, he had a right to do that.

"*By Mr. McDonald:* His trouble—

"*The Court:* He said the first time was when he was brought down to court. I think the jury got the picture. You are not kidding the jury, and I'm not kidding the jury. I think the jury got the picture from what the man said. If you don't like it, Mr. McDonald, object, I'll rule, and sit down, that's the

thing to do. I am trying to get this thing straightened out."

We are impressed that the cross examination of defendant Smith by the circuit judge could scarcely have failed to create in the minds of the jurors the belief that the judge was familiar with the difficulties between such defendant and his father-in-law, and that he considered defendant responsible therefor. The questions asked suggested a comparison of the 2 men, to the disadvantage of defendant Smith. The complaining witness was depicted as a law-abiding citizen who did only what he had a right to do, the implication therefrom being that defendant Smith was not of like character.

The examination of defendant Smith by the judge must be considered in connection with certain statements in the charge to the jury. It was stated therein that "there is only 1 question for you to decide, which of the parties in this case is telling the truth as to what occurred out there." After referring to the claims of the parties being in conflict, the judge also said: "There is no dispute about the assault having been made." Referring to Smith's claim that he acted in self-defense, the court charged:

"In this regard you must consider the law frowns upon the use of self-help except in cases of grave danger to one's self. The courts are open for the redressing of wrongs and no man may act as final arbiter in his own case and enforce his own determination. That statement means that no one has the right to take the law into his own hands, and in this regard I want to call your attention to the fact that in all of the previous associations between the complaining witness, Schuler, and his son-in-law, the complaining witness has always gone to the law, — with regard to the marriage of his daughter, — with regard to the nonsupport, — so you should bear that in mind, that up until this time he has always gone

through the orderly processes of the law, while the defendant, Smith, on the witness stand, didn't think that should be done."

It thus appears that in his charge to the jury the trial judge was directing attention to his cross examination of the defendant Smith and in effect repeating his opinion of the complaining witness and of said defendant. The cross examination and the charge did not involve merely a comment on testimony but extended to characterization of the individuals whose conduct was in question. This constituted prejudicial error.

Were the errors committed in the course of the trial sufficiently prejudicial to require the setting aside of the convictions of the defendants and the granting of a new trial? The test to be applied is whether because of the matters referred to defendants did not have a fair trial in the ordinary acceptance of that term. *People* v. *Neal*, 290 Mich 123. Consideration of the record in the case leads us to the conclusion that the question must be answered in the affirmative.

The convictions of the defendants are reversed and the case is remanded for further proceedings.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.