PEOPLE v ROBY

Docket No. 76398. Submitted December 17, 1984, at Lansing.—Decided August 20, 1985. Leave to appeal denied, 424 Mich —.

McArthur Roby was convicted of involuntary manslaughter by a jury in Bay Circuit Court and then pled guilty to being a third-time habitual offender. He was sentenced to from 29 to 30 years in prison, Eugene C. Penzien, J. Defendant appealed. *Held:*

1. The trial court did not abuse its discretion in allowing the prosecutor to recall defendant to the witness stand and impeach him with a prior conviction for armed robbery.

2. The trial court did not err in permitting the admission into evidence of a note allegedly written by defendant in which a person who testified against defendant at the preliminary examination in this matter was threatened. The note was relevant evidence and properly authenticated.

3. The fact that the trial court deviated from the standard criminal jury instructions does not entitle defendant to reversal of his convictions. The jury instructions given by the court adequately instructed the jury.

4. The trial court's comments and examination of witnesses, while possibly going beyond the needed clarification of testimony and entering potentially prejudicial ground, did not deprive defendant of a fair trial.

5. The fact that the trial court gave defendant's theory of the case before the prosecutor's did not result in undue prejudice to defendant.

6. The trial court considered and rejected defendant's collat-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Evidence §§ 320 *et seq.*
   See the annotations in the ALR3rd/4th Quick Index under Similar Acts or Facts § 2.

[2] Am Jur 2d, Trial § 88.
   Court's witnesses (other than expert) in state criminal prosecution. 16 ALR4th 352.

[3] Am Jur 2d, Habitual Criminals and Subsequent Offenders §§ 1 *et seq.*
   See the annotations in the ALR3rd/4th Quick Index under Habitual Criminals.

eral attack on the supplemental information. Defendant's argument that the court erred in refusing to allow the attack is rejected.

7. Defendant's sentence violates the rule that a minimum sentence may not exceed two-thirds of the maximum sentence. The sentence is modified to a term of from 20 to 30 years.

Convictions affirmed, with modification of sentence.

1. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — IMPEACHMENT.

The similarity between a prior conviction and a charged crime weighs against admission of evidence of the prior conviction for impeachment purposes but the decision whether or not to permit the admission of that evidence still remains within the trial court's discretion (MRE 609).

2. TRIAL — JUDGES — INTERROGATION OF WITNESSES.

A judge, in conducting a trial, has great power and wide discretion in matters of trial conduct and has the power to participate properly in the questioning of witnesses, but his power is not unlimited and should not be used to pierce the veil of judicial impartiality.

3. CRIMINAL LAW — SENTENCING — HABITUAL OFFENDERS — INDETERMINATE SENTENCES — TWO-THIRDS RULE.

The rule that the minimum term of an indeterminate sentence may not exceed two-thirds of the maximum term applies to habitual offenders.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Thomas J. Rasdale,* Assistant Prosecuting Attorney, for the people.

*George C. Bush,* for defendant on appeal.

Before: WAHLS, P.J., and D. E. HOLBROOK, JR., and C. A. WICKENS,* JJ.

PER CURIAM. Defendant was charged with open murder. He claimed that the killing was accidental and that he was acting in self-defense. A jury

* Circuit judge, sitting on the Court of Appeals by assignment.

convicted him of involuntary manslaughter, MCL 750.321; MSA 28.553, and he then pled guilty to being a third-time habitual offender, MCL 769.11; MSA 28.1083. Sentenced to a prison term of from 29 to 30 years, defendant appeals as of right. We affirm the conviction but modify defendant's sentence to from 20 to 30 years.

I

Defendant contends that the court erred in allowing the prosecutor to recall him to the stand and impeach him with evidence of a prior conviction for armed robbery.

MRE 609 permits impeachment by evidence of a prior conviction under certain circumstances. Defendant asserts that MRE 609 is inconsistent with MRE 102 and urges adoption of a rule prohibiting impeachment by evidence of a prior conviction unless defendant has introduced evidence of good character. *Cf.* MRE 404. Defendant's claim is one of judicial policy that should be addressed to our Supreme Court.

However, defendant also claims that the present rule was erroneously applied in this case. First, defendant contends that the similarity of a prior conviction to the offense being tried weighs against admissibility. We agree, but the balancing is committed to the trial court's discretion and, here, we find no abuse. *People v Ward,* 133 Mich App 344, 355-356; 351 NW2d 208 (1984), *lv pending.* Second, defendant contends that allowing the prosecutor to recall him to the stand to impeach him ensured that the prejudical impact of the admission of evidence of the conviction outweighed its probative value. While we disapprove of the prosecutor's tactic, we note that defense counsel advised the jury of the conviction during voir dire and opening

statement. On these facts, the court's ruling was not an abuse of discretion. *People v Barnard,* 93 Mich App 590; 286 NW2d 870 (1979).

## II

Defendant next challenges the admission of a note addressed to "Fred, K-blk", which stated:

"Fred,
You were warned now you are dead, sucker. In the County Jail or the Joint, the word is out on you snitch! I told you not to go to court! You are dead!"

Fred Conner testified that the note was dropped in his cell in K-block at the Bay County Jail, that he was the only Fred in K-block, that he had testified against defendant at the preliminary examination in this matter, that defendant had previously warned him orally not to testify, and that no one else had given warnings to him. On this testimony, the circuit court admitted the note over defendant's objection that it was not properly authenticated. We find no error on that basis. MRE 901.

Defendant also argues that the note was irrelevant. This objection was not raised in the court below and, therefore, not properly preserved for appeal. In any event, we believe the note tends to show consciousness of guilt and was relevant.

## III

Defendant challenges two jury instructions given by the court. Instead of giving CJI 4:2:02, on mixed direct and circumstantial evidence, the court gave the following instruction over defendant's objection:

"It is not necessary that every fact be proven directly

by a witness or an exhibit. A fact may be proven indirectly by other facts or circumstances from which it usually and reasonably follows according to the common experience and observations of mankind. This indirect evidence is sometimes called circumstantial evidence which you are to consider with other evidence in the case. There is no inherent difference in the quality of direct and indirect evidence. Indirect evidence can be and often is more compelling than direct evidence.

"When evidence is offered of a fact or a group of facts for the purpose of proving an element of the offense, you're being asked to apply your reasoning abilities and to draw reasonable inferences from those facts. Since the elements of a criminal offense must be proven beyond a reasonable doubt, that standard must be kept in mind when examining the evidence whether the evidence is direct or indirect."

Defendant contends that this instruction was insufficient to convey to the jury the prosecutor's burden to disprove any reasonable theory of innocence under *People v Foley,* 64 Mich 148; 31 NW 94 (1887), and *People v Dellabonda,* 265 Mich 486; 251 NW 594 (1933), and as set forth in paragraph (7)[1] of the standard criminal jury instruction. The commentary to the standard instruction indicates that paragraph (7) is "a restatement of fundamental burden of proof and presumption of innocence principles". We believe that the court adequately instructed the jury on those principles and that a failure to restate them per paragraph (7) was not error requiring reversal.

Instead of giving then CJI 3:1:12, the court gave the following instruction:

"If there is a conflict in the testimony of witnesses it

[1] "(7) If the direct and circumstantial evidence, taken together, is open to two reasonable constructions, one indicating guilt and the other innocence, it is your duty to accept the construction indicating innocence."

is your responsibility, as jurors, to determine, if you can, what testimony you believe to be true. Consider the extent to which conflicting testimony is supported by other evidence and whether the conflict involves a matter of importance or merely some detail."

Defendant urges that elimination of paragraph (3)[2] of the standard instruction was error, citing *People v Crofoot,* 254 Mich 167; 235 NW 883 (1931). However, we find no such error in light of other instructions on the burden of proof and presumption of innocence. *People v Larco,* 331 Mich 420; 49 NW2d 358 (1951); *People v Stewart,* 126 Mich App 374; 337 NW2d 68 (1983).

## IV

Defendant argues that the court's comments and examination of witnesses deprived him of a fair trial. Defendant points particularly to the court's examination of Fred Conner and the giving of defendant's theory of the case before the prosecutor's theory.

We are not persuaded that defendant did not receive a fair trial. We are impressed with defense counsel's able representation and zealous protection of defendant's rights. When the court tended to become too actively involved in the trial process, defense counsel was quick and persistent in opposing the court's real or preceived interference. Indeed, counsel's quickness at times drew legitimate reprimands from the court for interrupting. Nevertheless, we are left with the impression that

---

[2] "(3) However, if you have a reasonable doubt as to which testimony you believe, it is your duty to accept the testimony favorable to the defendant."

CJI 3:1:12 was deleted by committee on July 13, 1984, and its provisions moved into more general instructions. Paragraph (3) appears in proposed CJI 3:1:03(3).

the court risked invading the role of counsel and we would urge further self-restraint.

We note that defense counsel relied on *People v Smith,* 363 Mich 157; 108 NW2d 751 (1961), as supporting her position that the court should limit its questioning of witnesses. The court distinguished *Smith* as preceding MRE 614, which authorizes the court to interrogate witnesses. We conclude that *Smith* is still viable and applicable precedent; its principles are the same as those underlying the 1978 Rules of Evidence. As stated in *People v Roby,* 38 Mich App 387, 389; 196 NW2d 346 (1972), a case involving this same defendant in an earlier matter, the court has great power and wide discretion in matters of trial conduct and has the power to participate properly in the questioning of witnesses. That power is not unlimited, though, and should not be used to pierce "the veil of judicial impartiality".

When the court engages in extensive interrogation of witnesses, the probability of asking questions improper in form or scope increases; yet, the attorneys are almost certainly more reluctant to object to the court's improper questions than to an adversary's. The court's interrogation of Fred Conner in this case is a good example of going beyond the needed clarification of testimony and entering potentially prejudicial ground. A factor relevant to the authenticity of the death threat discussed in Issue II, *supra,* was whether Fred had received the note after he had ignored an oral warning by defendant and testified at defendant's preliminary examination. After counsel had finished their examinations of Fred, the following dialogue occurred between the court and the witness:

*"BY THE COURT:*
*"Q* I'm not sure whether you testified in the presence

of the jury about the time when this—when you received this note. Would you repeat that for me?

"*A* Which—this one?

"*Q* Yeah.

"*A* It was in the morning time.

"*Q* I mean, the—the dates.

"*A* After I testified in District Court.

"*Q* And did—were you able to pin it down to a particular week?

"*A* The—I think it was the second week of July if I'm not mistaken.

"*Q* And was—

"*MS. KLIMASZEWSKI:* Your Honor, I'm sorry. I can't hear the witness.

"*THE COURT:* Second week of July if I'm not mistaken is what he said.

"*BY THE COURT:*

"*Q* And were you about to be testifying in—in a—I don't—

"*A* No.

"*Q* I don't want to know what, but were you scheduled to testify in court in a matter involving Mr. Roby—

"*A* Oh, yeah, In Saginaw.

""*Q* All right. And it was during that week that you were scheduled to testify that you received the note?

"*A* Yes, Sir." `

Clearly, eliciting the fact that the note was received after giving testimony in district court (the preliminary examination in this case) was proper. The court then proceeded to the apparently harmless question of which week the note was received. Fred's answer was unnecessary to an understanding of the evidence as it had been presented by the parties, so we are left to wonder what was the court's purpose. Furthermore, the court opened the door for impeachment or bolstering of Fred's testimony through introduction from the court file of the actual date of the preliminary examination.

The court then continued on to ask if the note was received the same week as Fred was scheduled to testify in a matter concerning defendant. In fact, the matter was another criminal proceeding involving possession of a sawed-off shotgun. The court thus came very close to introducing evidence quite prejudicial to defendant and, as it was, left the jury to speculate what the proceeding in Saginaw might have been. However, since Fred had already testifed without objection that defendant was in possession of a sawed-off shotgun at the time of his arrest for the instant offense, we do not perceive undue prejudice resulting from the court's question.

Turning now to the matter of the theories of the parties, we find no undue prejudice in the court's reading defendant's theory first. The court stated that the order was not intentional, but occurred as it did merely because defendant's theory was on top of the prosecutor's in the pile of instructions. We accept the court's explanation. However, we believe comment on the form of the prosecutor's theory is in order. The theory was given as submitted, over defense objection that the theory was argumentative. The court did, however, instruct the jury not to regard the theories as telling what the evidence is.

We find that the prosecution's theory was not set forth in a short, factual statement as recommended by the criminal jury instructions, p 3-33. By giving the original theory, the court did not give "equal stress to the positions of each party". 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 562. While a cautionary instruction is of some value, we think the better practice in dealing with a prosecution theory which is lengthy and argumentative is to alter the theory pursuant to MCR 2.516(A)(5).

## V

Defendant contends that the court erred in refusing to allow his collateral attack on the supplemental information. We find that, while stating that the attack was brought in the incorrect forum, the court did consider and rejected the attack on the merits. We find no error. *People v Crawford,* 417 Mich 607; 339 NW2d 630 (1983); *People v Bradley,* 117 Mich App 776; 324 NW2d 499 (1982).

## VI

Defendant lastly challenges his sentence as being violative of the two-thirds rule of *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972). We agree and modify the minimum sentence to 20 years. The *Tanner* rule applies to habitual offenders. *People v Stevens,* 138 Mich App 438, 442-443; 360 NW2d 216 (1984). We find no additional ground for relief pursuant to *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983).

Convictions affirmed; sentence modified to from 20 to 30 years.