UNITED STATES of America, Appellee,

v.

Ricky DURHAM, Appellant.

No. 88–1390.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1988.

Decided March 2, 1989.

Jeffrey H. Haas, Chicago, Ill., for appellant.

Timothy J. Wilson, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and WHIPPLE,* District Judge.

BEAM, Circuit Judge.

Ricky Durham was convicted by a jury of the first degree murder of a United States Postal Service Mail Carrier who was engaged in the performance of his duties[1] and the use of a firearm in the commission of a crime of violence.[2] On appeal, Durham urges reversal of the district court[3] on numerous grounds. We need address only the following claims in detail: (1) that the government should not have been allowed to use hearsay evidence during cross-examination of a witness; (2) that it was error to admit a copy of a threatening letter received by the victim's mother; and (3) that the court improperly restricted cross-examination of a witness. We affirm.

## I. BACKGROUND

Kenneth Clark, the victim, purchased cocaine from Durham over a period of time and was indebted to Durham for the price of the drugs. Approximately one year before the murder, Clark's mother received a letter. The letter, directed to "K.C.," made reference to a debt of fifteen hundred dollars, stated that "a warrant is out for your [Clark's] head," and was signed "Ricky." The letter was given to the police who made a xeroxed duplicate which was given to Clark's sister. The original of the letter cannot be located. Upon receipt of the letter, Clark disappeared for a time. When Clark reappeared, he entered a drug rehabilitation program.

At approximately 11:00 a.m. on May 7, 1988, Durham arrived at the home of Durham's nephew, Charles Durham, and the nephew's girlfriend, Robin Porter. Later that same morning, Durham left the home with a gun and drove away in a green station wagon. In the early afternoon of that same day, Clark was shot to death while he was delivering mail on his route.

Mary Perry heard shots and saw a man who looked like Durham entering an alley. Ida Hubbard observed Durham enter the alley and drive away in a green station wagon. That same day, Durham was picked up at his mother's home. The green station wagon was discovered at the home of Durham's mother. A telephone number taken from the victim's wallet was traced to the home of the defendant's mother. The green station wagon was registered to Zach Walls, a friend of Durham's nephew. At the direction of Durham, the station wagon was purchased by Durham's nephew for use in the sale of drugs. Durham's nephew loaned the station wagon to Durham about one week before the murder.

Durham was indicted on two counts, for murder of a United States Postal Service Mail Carrier and unlawful use of a firearm in the commission of a felony. As indicated, a jury found Durham guilty of both offenses. He was sentenced to five years incarceration for the firearms violation and to life imprisonment for the murder, the sentence of life imprisonment is to run consecutively with the five-year sentence. This appeal followed.

* The HONORABLE DEAN WHIPPLE, United States District Judge for the Western District of Missouri, sitting by designation.

1. A violation of 18 U.S.C. §§ 1111 and 1114.

2. A violation of 18 U.S.C. § 924(c).

3. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

## II. DISCUSSION

### A. *Cross-examination of George Walker*

On direct examination during defendant's case-in-chief, George Walker, a co-worker of Clark's, testified that a man approached him on numerous occasions, including the day of the murder, asking Walker to have Clark contact him. During cross-examination, the government elicited testimony from Walker that Walker found out from someone else that the man was a landlord or a realtor. Durham asserts that this was inadmissible hearsay and that it prejudiced him because it rebutted his theory that someone else committed the murder.

"The doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination." *United States v. Lum*, 466 F.Supp. 328, 334 (D.Del.) (citations omitted), *aff'd without opinion*, 605 F.2d 1198 (3d Cir. 1979). "The doctrine * * * is limited to testimony that might explain or contradict the testimony offered by the opposing party on direct examination; it cannot be 'subverted into a rule for injection of prejudice.'" *Id.* at 335 (quoting *United States v. Winston*, 447 F.2d 1236, 1240 (D.C.Cir. 1971)).

■ Here, Durham's direct examination elicited the fact that a man inquired of Clark's whereabouts. Without more, this could lead the jury to believe that this man murdered Clark. Therefore, it was necessary for the government to clear up this impression, if possible, and show the jury that the man was looking for Clark to lease or sell him property. *See United States v. Womochil*, 778 F.2d 1311, 1315 (8th Cir. 1985) (finding that it was no abuse of discretion to allow the government to clear up a false impression created on cross-examination). Under the circumstances, we conclude that the cross-examination of Walker was proper.

### B. *The Letter*

For two reasons, Durham objects to the introduction of a copy of the threatening letter given to Clark's mother. Durham argues that there was nothing to link him to the letter. Additionally, Durham contends that the letter was inadmissible because it was a copy. We address each contention in turn.

Fed.R.Evid. 901(a) provides that "authentication * * * is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." It is well settled that authentication can be established by circumstantial evidence. *See United States v. Helmel*, 769 F.2d 1306, 1312 (8th Cir.1985); *United States v. Wilson*, 532 F.2d 641, 645 (8th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed. 2d 117 (1976). Furthermore, in similar circumstances, courts have held threatening letters properly authenticated by circumstantial evidence. *See People v. Roby*, 145 Mich.App. 138, 141, 377 N.W.2d 366, 368 (1985); *Commonwealth v. Brooks*, 352 Pa. Super. 394, 395–99, 508 A.2d 316, 318–22 (1986).

■ Here, we are satisfied that Durham authored the letter. Clark purchased cocaine from Durham. Zach Walls, a friend of Durham's nephew, overheard Durham state that the mailman owed him money. Moreover, Durham's nephew was instructed to get the money from Clark. Later, Durham told his nephew that Clark owed him money and was avoiding him and that Durham would have to hurt Clark. The letter itself refers to the debt. Additionally, the letter was signed "Ricky" which is Durham's first name.

■ Durham next argues that it was improper to admit a copy of the letter into evidence. Clark's mother and sister, who both read the original letter, testified that the copy accurately reflected the contents of the original letter. Their testimony satisfied Fed.R.Evid. 901(b)(1) which permits authentication by "testimony of a witness with knowledge * * * that a matter is what it is claimed to be."

We conclude that a copy of the threatening letter was properly received into evidence.

### C. *Cross-examination of Zach Walls*

The trial court refused to allow Durham to cross-examine Zach Walls about charges that had allegedly been dismissed in exchange for Walls' testimony. Durham asserts that this refusal denied him his sixth amendment right to confront witnesses against him.

"Trial judges retain broad discretion insofar as the confrontation clause is concerned to limit the scope of cross-examination based on concerns of harassment, prejudice, confusion of the issues or interrogation that is repetitive or only marginally relevant." *United States v. Klauer*, 856 F.2d 1147, 1149 (8th Cir.1988) (citations omitted). "A trial court's decision to limit cross-examination will not be reversed 'unless there has been a clear abuse of discretion and a showing of prejudice to defendant.'" *Id.* (quoting *United States v. Lee*, 743 F.2d 1240, 1249 (8th Cir.1984)).

■ The trial court conducted a voir dire examination outside the presence of the jury to permit Durham to determine if Walls had made a "deal" with the prosecution. During cross-examination, Walls denied, repeatedly, that a promise had been made in exchange for his testimony. The government's attorneys also denied the existence of any such agreement.

Given this evidence, we hold that the restriction on cross-examination did not violate Durham's rights of confrontation.

### III. CONCLUSION

We have carefully examined all other issues raised by Durham and find them to be without merit. For the foregoing reasons, the decision of the district court is affirmed.