# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3679
_____

Fernando C. Valadez

*Plaintiff - Appellant*

v.

Watkins Motor Lines, Inc.; Dennis D. Watts

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 13, 2014
Filed: July 11, 2014

_____

Before GRUENDER, BRIGHT, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Fernando Valadez was injured in a traffic accident when his van was struck by a semi-truck driven by Dennis Watts and owned by Watkins Motor Lines, Inc. (Watkins). Valadez sued Watts and Watkins for his injuries, including his past and future medical expenses and impaired earning capacity. The jury returned a verdict assigning no fault to either party. Valadez appeals evidentiary rulings made by the

district court, which he claims affected the jury's verdict. Having jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I. Background

In 2006, Fernando Valadez was employed as a delivery driver. On February 2, 2006, Valadez was traveling with Arturo Contreras-Sanchez to St. Louis, Missouri, to pick up vehicles purchased at an automotive auction house and transport the vehicles to El Paso, Texas. The men arrived in St. Louis, picked up the vehicles at the auction house, and prepared to leave. Valadez was to drive a 1996 Plymouth Grand Voyager and tow a 2001 Ford Escape on a tow dolly. Contreras-Sanchez was to drive separately in a 2001 Ford F150 pick-up truck. Valadez and Contreras-Sanchez claim to have attached a simple tow light kit to the Ford Escape, consisting of two bulbs to signal braking and turning. In order to attach the kit, Valadez had to splice the wires on the back of the Plymouth Grand Voyager. After making sure the lights were working prior to departure, the pair left for El Paso with Valadez following Contreras-Sanchez.

At around 2 a.m. on February 3, 2006, Valadez and Contreras-Sanchez were approaching the exit for Highway YY, where they had previously agreed to stop. When the two began to exit, the Ford Escape that Valadez was towing was hit from behind by the semi-truck driven by Watts. Both the Ford Escape and the Plymouth Grand Voyager were pushed off the road into the ditch. Valadez and Contreras-Sanchez claim to have put their turn signals on and begun to slow down well in advance of the exit. Valadez asserts he slowed down from 60–65 mph to 55 mph at the time of the accident. Watts claims Valadez was instead stopped on the highway. Watts also claims not to have seen any tow lights on the back of the vehicle. No tow lights or remains of tow lights were found by the investigating officer. Valadez suggests the tow lights were destroyed in the crash.

After the accident, Valadez was taken by ambulance to an emergency room where he received treatment for injuries to his lower back. Since the accident, Valadez has continued to suffer from chronic pain to his lower back, and doctors have recommended that Valadez have surgery. Valadez is no longer able to do the same type of work and has since been forced to take lower paying jobs.

Valadez brought a personal injury suit against Watts and Watkins in the Eastern District of Missouri based on diversity jurisdiction. Prior to trial, Valadez brought a motion in limine to exclude portions of the accident report that presented the opinions and conclusions of the investigating officer. The district court excluded the entire accident report over Watts' and Watkins' objections, citing primarily the unavailability of the investigating officer who authored the accident report. The district court stated that the parties could stipulate to any facts contained in the report, but that the report itself was inadmissible.

During the trial, Watts testified that Valadez's vehicle looked "absolutely stopped" on the highway and that he told the investigating officer at the scene that Valadez was stopped on the highway. Seeking to impeach Watts' testimony, Valadez presented the testimony of Sergeant Woody Hicks, the officer who reviewed the accident report, as to what information the investigating officer included in the accident report. Mr. Cervantes, plaintiff's counsel, asked Sergeant Hicks whether there were any statements in the accident report suggesting Valadez was stopped on the highway. Sergeant Hicks testified that there was no mention in the accident report of Watts telling the officer at the scene that Valadez's vehicle was stopped. The relevant testimony is as follows:

Mr. Cervantes: And did the police officer write a quotation down . . . when he interviewed . . . Mr. Watts?

. . .

Sergeant Hicks: He wrote, "Driver one stated, 'I was driving westbound. And all of [a] sudden, a vehicle without taillights was in front of me—in front of me, and I went—and went under my truck. I then pushed him off in a ditch.'"

. . .

Mr. Cervantes: And is there any mention by Mr. Watts in the quoted statement that he reported to the police officer that my client's vehicle was stopped on the highway?

Sergeant Hicks: No, there is not.

. . .

Mr. Cervantes: Is there a box on the box [sic] that can be checked when it has been reported when a vehicle was improperly stopped on the highway?

Sergeant Hicks: Yes.

. . .

Mr. Cervantes: . . . And if it has been reported to the police officer that someone claims that a vehicle has been improperly stopped on the highway, he can check that box; correct?

Sergeant Hicks: If the officer can prove that it was stopped on the highway.

Mr. Cervantes: And in this case, the police officer did not check for my client that he was improperly stopped on the highway; correct?

Sergeant Hicks: Correct. He did not check that.

Following this exchange, Mr. Swift, who was jointly representing Watts and Watkins, argued to the court that Sergeant Hicks' response that the investigating officer will check the "improperly stopped on the highway" box "if the officer can prove that [the vehicle] was stopped" opened the door to asking about the investigating officer's opinions and conclusions on cross-examination. Mr. Swift noted that the boxes in the accident report that Mr. Cervantes inquired about were part of a section entitled "Probable Contributing Circumstances,"[1] where the investigating officer can note possible causes of the accident. In that section, multiple "Probable Contributing Circumstances" are listed, each with a check box next to it that could be checked or left blank. Mr. Swift drew the court's attention to the fact that other boxes, ones not mentioned by Mr. Cervantes during his examination of Sergeant Hicks, *were* checked. Mr. Swift suggested that Mr. Cervantes' questions to Sergeant Hicks may have left the improper impression that no other boxes were checked and/or there was nothing else the officer thought he could prove regarding a possible cause for the accident. Mr. Swift argued that Mr. Cervantes had "opened the door" to improper evidence such that Mr. Swift should be allowed to "cure" the error by inquiring about whether any other boxes were checked.

Mr. Cervantes objected, arguing he had not opened the door to improper evidence. Mr. Cervantes suggested the purpose of his questions was simply to find out whether there was a check box for a vehicle being "improperly stopped on the highway" and whether that box was checked. By eliciting the fact that the box had not been checked, Mr. Cervantes intended to impeach Watts; he was highlighting the possible inconsistency between: (1) Watts' testimony that he had told the officer Valadez was stopped; and (2) there being no mention in the accident report of Watts

[1]The "Probable Contributing Circumstances" section of the accident report form appears as one large "box" and contains two identical columns of small boxes that can be checked, one column for each vehicle involved (V1 and V2), identifying various possible causes of an accident.

making a statement that Valadez was stopped.  Mr. Cervantes also pointed out that, during his direct examination, he never mentioned the title of the section, "Probable Contributing Circumstances."  The district court overruled the objection, and Mr. Swift was allowed to ask whether other boxes in this section were checked.  Mr. Swift then cross-examined Sergeant Hicks as follows:

Mr. Swift:        Okay. And you were asked about Box 18 . . . . And that box is "[P]robable [C]ontributing [C]ircumstances;" true?

Sergeant Hicks:  Yes.

Mr. Swift:        And in that box you are asked about "improperly stopped on the roadway" and [the investigating officer], I think he said, could not prove that.  So he did not check that box, true?

Sergeant Hicks:  Correct.

Mr. Swift:        But [the investigating officer] did check some box—boxes with respect to his official conclusions that he felt he could prove, true?

Sergeant Hicks:  Yes.

. . .

Mr. Swift:        Sergeant, [the investigating officer] did check boxes in the "Probable Contributing Circumstances" part of the report; true?

Sergeant Hicks:  Yeah.

Mr. Swift:        And what was the first box he checked with respect to the Valadez vehicle?

-6-

Sergeant Hicks: "Vehicle defects."

Mr. Swift: Okay. And did he check another box with respect to the Valadez vehicle?

Sergeant Hicks: Yes.

Mr. Swift: And what was that box?

Sergeant Hicks: "Improper lane use or change."

. . .

Mr. Swift: And what was the box checked for "Probable Contributing Circumstances" of the Watkins Motor Lines vehicle and Mr. Watts['] operation?

. . .

Sergeant Hicks: "None."

During closing arguments, Mr. Swift relied significantly on Sergeant Hicks' testimony regarding the "Probable Contributing Circumstances" as listed in the accident report. Mr. Swift argued, over Mr. Cervantes' repeated objections, that the jury should focus on the conclusions reached by the investigating officer:

Mr. Swift: I think the first thing you need to think about is what the official State Highway Patrol report said. . . .

. . .

Mr. Swift: . . . [A]bout [what] the "Probable Contributing Circumstances" were? You know what they marked for Watts and Watkins? "None." The official report from the Missouri Highway Patrol marked "None." They did mark "Improper Lane Usage" and "Vehicle

Defect" for Mr. Valadez.  That's what the official report said, and that's what you heard in evidence.

Subsequently, the jury returned a verdict assigning no fault for the accident to either party.  Valadez appeals the district court's decision to allow the admission of certain portions of the accident report containing the conclusions of the non-testifying investigative officer, which had previously been ruled inadmissible, under the theory that Valadez had opened the door to their admission.

## II. Discussion

In a diversity case, questions about the admissibility of evidence are governed by the Federal Rules of Evidence.  Bradshaw v. FFE Transp. Servs., Inc., 715 F.3d 1104, 1107 (8th Cir. 2013).  We review a district court's evidentiary rulings for an abuse of discretion.  United States v. Pirani, 406 F.3d 543, 555 (8th Cir. 2005) (en banc).  Where we find an abuse of discretion, we must then determine whether the error was harmless.  United States v. Lupino, 301 F.3d 642, 645 (8th Cir. 2002) (citing United States v. Byler, 98 F.3d 391, 394 (8th Cir. 1996)).  An error is harmless if we find that the error did not have a "substantial influence" on the jury's verdict.  Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995).

Valadez claims the district court abused its discretion when it allowed Watts and Watkins to introduce substantive evidence of fault from the accident report, which the district court had previously ruled inadmissible.  The district court's pre-trial ruling was that the entire accident report was inadmissible.  While the record is not entirely clear as to the district court's reasoning, it appears the court was most concerned about the unavailability of the officer.  The district court's concern about the unavailability of the investigating officer suggests the district court found the accident report was insufficiently trustworthy.  Therefore, we believe the district court was concerned the entire accident report was hearsay that did not fall within any applicable exception.  See Fed. R. Evid. 803(6) & (8) (Both the business records

exception and public records exception require a finding that "neither the source of the information nor other circumstances indicate a lack of trustworthiness."). Because Watts and Watkins do not challenge that initial ruling on appeal, we accept the district court's conclusion that the accident report was inadmissible hearsay.

Valadez argues the district court erred in concluding he had opened the door to rebuttal evidence. He asserts that he did not open the door to inadmissible evidence, because his purpose in asking Sergeant Hicks about the lack of a statement in the accident report was not to admit the investigating officer's opinions and conclusions as substantive evidence. Rather, the purpose was to impeach Watts by showing the inconsistency between the accident report and his testimony at trial. In his testimony, Watts claimed he told the officer at the scene that Valadez's vehicle was stopped on the highway. To contradict this statement, Mr. Cervantes sought to elicit from Sergeant Hicks that there was no mention in the investigating officer's accident report that Valadez's vehicle was stopped, or reported as stopped, on the highway. Watts and Watkins counter that Mr. Cervantes' questioning did open the door, by soliciting an answer from Sergeant Hicks regarding what the investigating officer could "prove." According to Watts and Watkins, the district court did not err in allowing Mr. Swift to inquire further about the investigating officer's other opinions and conclusions regarding the "Probable Contributing Circumstances" of the accident, as reflected in whether additional boxes were, or were not, checked.

"'The doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination.'" United States v. Midkiff, 614 F.3d 431, 442 (8th Cir. 2010) (quoting United States v. Durham, 868 F.2d 1010, 1012 (8th Cir. 1989)). In theory, the admission of inadmissible evidence allows the injured party to cure the problem and "clear up the false impression" or to "clarify or complete an issue opened up by [opposing] counsel." United States v. Womochil, 778 F.2d 1311, 1315 (8th Cir. 1985). But the door is not opened to all similar,

inadmissible evidence.  Rather, "[t]he evidence introduced [in response] must rebut something that had been elicited . . . ." United States v. Finch, 16 F.3d 228, 233 (8th Cir. 1994).  The doctrine of opening the door cannot "'be subverted into a rule for injection of prejudice.'"  United States v. Brumfield, 686 F.3d 960, 964 (8th Cir. 2012) (quoting Durham, 868 F.2d at 1012).

As an initial matter, we doubt that Valadez's questioning elicited inadmissible evidence such that the door was open to rebuttal in the first instance.  Valadez attempted to impeach Watts by showing that Watts' testimony was inconsistent with the investigating officer's report.  "'Under certain circumstances, a witness's prior silence regarding critical facts may constitute a prior inconsistent statement where failure to mention those matters . . . conflict[s] with that which is later recalled.'" United States v. Vaughn, 370 F.3d 1049, 1053 n.2 (10th Cir. 2004) (quoting United States v. Strother, 49 F.3d 869, 874 (2d Cir. 1995)).  That is true here.  If Watts thought Valadez was stopped on the road, he reasonably would have told the investigating officer that important fact.  And the investigating officer would reasonably have recorded it.

Evidence that is inadmissible for one purpose may be admissible for another purpose.  See Fed. R. Evid. 105. A statement offered to impeach credibility by showing inconsistency is not offered for the truth of the matter asserted in the statement and is therefore not hearsay at all.  See Fed. R. Evid. 801(c) ("'Hearsay' means a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement.").  As long as the purpose of the question is not to elicit an out-of-court statement for the truth of the matter asserted, then the answer to the question does not call for hearsay, even when the answer includes the content of the out-of-court statement.  See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172–73 & n.18 (1988).  Thus, if the purpose of Mr. Cervantes' question was to attempt to demonstrate the inconsistency between Watts' current testimony and what he told the investigating officer at the scene (as illustrated by what the officer recorded), then

Mr. Cervantes' question does not elicit hearsay. See id. Because that was the purpose, Mr. Cervantes did not elicit inadmissible hearsay.

Even if we were to assume that Mr. Cervantes' questioning—regarding whether a box on an accident report was checked—improperly called for an inadmissible opinion as substantive evidence of fault, we find that Mr. Swift's follow-up questions about the officer's other conclusions in the accident report did not "clear up" any potential misimpression left by Mr. Cervantes' questions. The remedy for improper evidence is not always additional improper evidence. The doctrine of opening the door is more limited than that. Evidence allowed through the open door "must rebut something that had been elicited." Finch, 16 F.3d at 233. The rebuttal evidence offered to cure the error must be commensurate with the magnitude of the error itself, or the extent to which the door was opened. Otherwise, courts risk subverting the doctrine of opening the door "into a rule for injection of prejudice.'" Brumfield, 686 F.3d at 964 (quoting Durham, 868 F.2d at 1012). Quite simply, a minor mistake by one party does not give permission to an opposing party to admit any and all otherwise inadmissible evidence that it so desires.

Here, Mr. Swift's questions went too far—moving beyond remedying an implication that no other boxes were checked. But that is not to say that Watts and Watkins were without a remedy. To the extent they were concerned about improper prejudice, a limiting instruction would have addressed those concerns. Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."). A limiting instruction would have informed the jury that the fact the "improperly stopped on the highway" box was not checked was admissible only for purposes of impeachment and was not to be considered as substantive evidence of fault.

Given the district court's pre-trial ruling that the accident report was inadmissible, Watts and Watkins should not have been allowed to introduce the officer's opinions and conclusions from the accident report. We are particularly troubled by Mr. Swift's emphasis of this evidence in his closing. In closing, Mr. Swift reminded the jury of what the "official highway report" concluded—that Valadez was at fault and that Watts was not at fault. This is exactly the sort of opinion testimony about an ultimate conclusion that we have cautioned "merely tells the jury what result to reach" and is therefore "not sufficiently helpful to the trier of fact to be admissible." Kostelecky v. NL Acme Tool/NL Industries, Inc., 837 F.2d 828, 830 (8th Cir. 1988) (citing Hogan v. Am. Tel. & Tel. Co., 812 F.2d 409, 411 (8th Cir. 1987)). Having reviewed the entire record, we conclude the introduction of the investigating officer's opinions and conclusions by Mr. Swift was improper and had a substantial influence on the jury's verdict.

## III. Conclusion

For the reasons stated above, we reverse and remand for a new trial consistent with this opinion.

_____