# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1034
_____

United States of America,

*Plaintiff - Appellee*,

v.

Valentino James Bagola, also known as Tino,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: March 12, 2015
Filed: August 6, 2015

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and WHITE,[1] District
Judge.

_____

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern
District of Missouri, sitting by designation.

COLLOTON, Circuit Judge.

Following a jury trial, Valentino Bagola was convicted of two counts of first degree murder, in violation of 18 U.S.C. §§ 1111(a) and 1153. The district court[2] sentenced Bagola to two concurrent terms of life imprisonment. On appeal, Bagola challenges the district court's jury instructions on felony murder and child abuse, the sufficiency of the evidence to convict him, and the district court's restriction of his cross-examination of a witness. We affirm.

I.

D.S. and her brother T.D., members of the Spirit Lake Sioux Tribe, were nine and six years old, respectively, when they were found dead on May 21, 2011. Mena Shaw, the children's mother, found D.S. and T.D. obscured by a blanket in a bedroom at the house of their father, Travis DuBois, on the Spirit Lake Reservation in North Dakota.

D.S., who was found without underwear or pants, had sustained forty stab wounds. A battery had been inserted into her rectum. T.D. suffered sixty-six stab wounds, including one that fractured his skull and another that made a shallow, seven-centimeter cut across the front of his neck. Law enforcement agents responding to the scene recovered a knife with a broken handle from an indoor trash can, and a smaller knife from the trash outdoors. There was blood on both knives. Agents also noted that a partially open basement window permitted access to the DuBois residence.

---

[2]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

Shaw, the mother, had moved out of the DuBois residence shortly before D.S. and T.D. were murdered, leaving the children in the care of DuBois. DuBois left the home after Shaw discovered the bodies of T.D. and D.S. He was later arrested for public intoxication. Law enforcement agents focused on DuBois as a suspect in the murders and interviewed him for seven hours in the wake of the crime. Several days later, during a polygraph examination, DuBois denied any involvement in the murders, but then confessed after the examination that he had committed the crime.

Forensic evidence led investigators to change their focus. Bagola became the main suspect after law enforcement agents discovered that DNA found under D.S.'s fingernails matched Bagola's. Bagola was a cousin of D.S. and T.D. He had lived with Shaw, DuBois, D.S., and T.D. at the DuBois residence in early 2011, but moved into another house nearby before the children were murdered. Bagola occasionally babysat D.S., T.D., and another sibling, and he did so in the days before D.S. and T.D. were killed. Investigators interviewed Bagola, and he provided detailed oral and written confessions to the murders of D.S. and T.D. and the sexual abuse of D.S.

A grand jury indicted Bagola, charging him with the first degree murders of D.S. and T.D. As relevant on appeal, the murder charges were based on the federal felony-murder law, which provides that a "murder . . . committed in the perpetration of, or attempt to perpetrate, . . . aggravated sexual abuse[,] sexual abuse, [or] child abuse . . . is murder in the first degree." 18 U.S.C. § 1111(a). The indictment alleged that Bagola committed the murder of D.S. in the perpetration of and attempt to perpetrate the aggravated sexual abuse, sexual abuse, and child abuse of D.S. As to the murder of T.D., the alleged predicate offense was the child abuse of T.D.

A jury found Bagola guilty of both counts of murder based on all of the predicate offenses charged in the indictment. The court sentenced him to life imprisonment, and Bagola now appeals the convictions.

-3-

II.

Bagola first challenges the district court's jury instructions on felony murder and child abuse. Bagola disputes Jury Instructions 5 and 6, which provided that the fourth element of first degree murder was that a killing was committed "during the perpetration of, or attempt to perpetrate," sexual abuse, aggravated sexual abuse, or child abuse of the victim. R. Doc. 192, at 6, 9. Bagola contends that the instructions were wrong to include "child abuse" as a predicate felony during which a killing was committed, because the child abuse of D.S. and T.D. "merged" with the murders. He interprets the felony-murder statute, 18 U.S.C. § 1111(a), to mean that the predicate felony must be "something apart from the murder itself." On this view, the jury should have been instructed that if the act that constituted child abuse was the same act that caused the victim's death, then the jury could not convict Bagola of murder based on a predicate felony of child abuse. Bagola cites no authority supporting his view that § 1111(a) should be construed in this manner, but he directs us to a divided decision of the Iowa Supreme Court applying his preferred rule under an Iowa murder statute. *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006).

The district court expressed no view on the legal question now presented, and it is little wonder why not. Bagola proposed the very instruction to which he now objects. In his proposed jury instructions, Bagola asked the court to instruct the jury that one element of the murder charges could be satisfied by proof that "the killing was committed in the perpetration, or attempt to perpetrate, *child abuse*" against D.S. or T.D., respectively. R. Doc. 147, at 3, 4 (emphasis added). The court instructed the jury as Bagola requested, and Bagola raised no objection.

"[A] defendant who requests and receives a jury instruction may not challenge the giving of that instruction on appeal." *United States v. Mariano*, 729 F.3d 874, 881 (8th Cir. 2013). Where a defendant has "invited" an alleged mistake, there can be no reversible error. *Id*. at 880-81. Accordingly, we reject Bagola's challenge to

the district court's jury instructions on the fourth element of felony murder. We express no view on Bagola's proposed interpretation of § 1111(a).

Bagola also challenges the district court's jury instruction on the definition of "child abuse." According to the instruction, one element of child abuse is that the defendant "willfully inflicted bodily injury, substantial bodily injury, or serious bodily injury upon a child." R. Doc. 190, at 19. Bagola says the instruction was wrong, because the federal felony-murder statute defines child abuse as "intentionally or knowingly causing death or *serious bodily injury* to a child." 18 U.S.C. § 1111(c)(3) (emphasis added). The error, he argues, permitted the jury to convict him based on a finding of "bodily injury" without finding "serious bodily injury."

It is difficult to fathom how Bagola could have been prejudiced by the cited error. Could a jury conceivably have found "bodily injury" but not "serious bodily injury" in a case involving two deaths and at least forty stab wounds per child? But we need not even analyze prejudice because, again, Bagola is in no position to challenge the giving of an instruction that he requested. *Mariano*, 729 F.3d at 880. Bagola's proposed instruction on "child abuse" would have required the government to prove that he "inflicted, or allowed to be inflicted, bodily injury, substantial bodily injury, or serious bodily injury." R. Doc. 147, at 11. The court delivered precisely the instruction that Bagola requested. There is no reversible error.

### III.

Bagola next contends that there was insufficient evidence for the jury to convict him of the felony murder of D.S. He asserts that no reasonable jury could have found that he perpetrated, or attempted to perpetrate, the predicate offenses of sexual abuse or aggravated sexual abuse. This argument is premised on Bagola's contention, addressed above, that the murder conviction cannot be sustained based on the predicate offense of child abuse. As we have rejected Bagola's appeal on that

point, the challenge to the sufficiency of evidence to establish sexual abuse and aggravated sexual abuse is necessarily fruitless. The conviction can be sustained on the ground that Bagola killed D.S. during the perpetration of child abuse. In any event, for reasons discussed below, there was also sufficient evidence for a rational jury to find that Bagola killed D.S. during the perpetration, or attempted perpetration, of sexual abuse and aggravated sexual abuse.

Sexual abuse consists of knowingly causing another person to engage in a sexual act by threatening or placing that other person in fear. 18 U.S.C. § 2242(1). Aggravated sexual abuse is causing the sexual act by using force against that person or by "threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." *Id*. § 2241(a). A "sexual act" includes penetration, however slight, by the penis of the anus. *Id*. § 2246(2)(A). Bagola argues that the only evidence that he perpetrated, or attempted to perpetrate, sexual abuse or aggravated sexual abuse is his statement that he "started to bone [D.S.]," and the discovery of a battery in D.S.'s rectum. He insists that this evidence was insufficient to support the jury's verdict on the predicate offenses.

Bagola confessed to raping D.S. anally. He stated that he "started to bone [D.S.]," and defined "bone" as some contact between his penis and the child's anus. Bagola also admitted that he penetrated D.S.'s anus, responding affirmatively when officers asked him whether he was "able to fit [his] penis inside of her" and whether his "penis [was] hard when [he was] sticking it in her."

A confession must be corroborated to support a criminal conviction, *Wong Sun v. United States*, 371 U.S. 471, 488-89 (1963), but there was substantial independent evidence in this case to justify an inference that Bagola's admissions were true. Some corroborative evidence tended to verify Bagola's admission of the criminal acts; other evidence fortified the truth of the confession more generally. Both types of evidence can satisfy the corroboration requirement. *Id*. at 489; *United States v. Kirk*, 528 F.3d

-6-

1102, 1111-12 & n.10 (8th Cir. 2008). The detailed nature of Bagola's confession further bolsters its veracity. *Rachlin v. United States*, 723 F.2d 1373, 1379 (8th Cir. 1983).

Most prominent of the corroborating evidence was the condition of D.S.'s body when discovered. Bagola admitted penetrating her anus. D.S. was found wearing no pants or underwear, and there was a battery lodged in her rectum. Investigators also recovered Bagola's DNA from under D.S.'s fingernails, thus corroborating Bagola's admission that he thought D.S. scratched him in an attempt to fight him off.

Investigators corroborated other details. Bagola admitted entering the DuBois residence "through the bottom window;" investigators securing the crime scene found a partially open basement window that allowed entry to the residence. Bagola admitted in his written confession that he "stabb[ed T.D.] constantly one after another," "cut [T.D.'s] throat and leave [sic] him there to bleed out," and "started to stab [D.S.] one after another." T. Tr. Vol. III, at 364. A forensic examiner corroborated this account with testimony that T.D. sustained sixty-six stab wounds, including a shallow cut to his throat that measured seven centimeters, while D.S. was stabbed forty times.

Bagola confessed that he used a big knife, that its handle broke when he was stabbing one of the children, and that he disposed of the knife in an indoor garbage can or outdoors. Investigators recovered a broken bloody knife in the kitchen trash, and a smaller bloody knife in the trash outdoors. The forensic examiner bolstered the accuracy of Bagola's confession by testifying that T.D. sustained a stab wound that fractured his skull, and that it was possible for a knife to break if it were removed after becoming lodged in a skull. Another forensic examiner testified that Bagola's palm print and T.D.'s blood were found on a computer in the bedroom where D.S. and T.D. were found.

There was ample evidence to support the jury's finding that Bagola killed D.S. during the perpetration of sexual abuse and aggravated sexual abuse. His confession and corroborating evidence could lead a rational jury to conclude that he knowingly used threats and force to penetrate D.S.'s anus with his penis. Accordingly, Bagola's conviction for murdering D.S. need not rest solely on the predicate offense of child abuse. The jury's alternative findings that the killing was committed in the course of sexual abuse and aggravated sexual abuse are independent grounds to sustain the conviction.

IV.

Bagola next argues that the district court abused its discretion under the rules of evidence and violated his rights under the Confrontation Clause by limiting his cross-examination of DuBois. Because DuBois initially confessed to the murders, Bagola sought to demonstrate reasonable doubt about whether the government was prosecuting the right man. As part of that strategy, Bagola's counsel attempted to present evidence about what happened when investigators administered a polygraph examination to DuBois. In particular, counsel tried to elicit from DuBois that when DuBois denied to the examiner that he stabbed or caused injury to the children, the examiner told DuBois that he was "strongly reacting" during the test. The government objected on the ground that the results of a polygraph examination are inadmissible, and that DuBois's answer about the examiner's comment would disclose a result of the examination. The district court sustained the objection.

The use of polygraph evidence is disfavored. *United States v. Montgomery*, 635 F.3d 1074, 1094 (8th Cir. 2011). "[T]here is simply no consensus that polygraph evidence is reliable," *United States v. Scheffer*, 523 U.S. 303, 309 (1998), and, "[b]y its very nature, polygraph evidence may diminish the jury's role in making credibility determinations." *Id.* at 313 (plurality opinion); *see United States v. Gianakos*, 415 F.3d 912, 924-25 & n.7 (8th Cir. 2005). For these reasons, the district court ordered

before trial that while Bagola could elicit testimony about statements made by DuBois during the examination, he was forbidden to introduce evidence about the results of the examination. Consistent with the pretrial order, the court ruled during trial that evidence of the examiner's statement that DuBois was "strongly reacting" when answering questions about the killings was inadmissible.

Bagola argues that the district court abused its discretion by excluding the examiner's statement to DuBois because the government "opened the door" to this line of inquiry. "The doctrine of opening the door allows a party to explore otherwise inadmissable evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination." *United States v. Durham*, 868 F.2d 1010, 1012 (8th Cir. 1989) (internal quotation marks omitted). The otherwise inadmissible evidence must "clarify or rebut an issue opened up" by opposing counsel. *United States v. Beason*, 220 F.3d 964, 968 (8th Cir. 2000).

The government did not "open the door" to evidence about results of the polygraph examination. On direct examination, DuBois testified that he was administered a polygraph examination, that he agreed to submit to the test because he was "not lying" and was therefore "not afraid" of the test, and that he told an investigator after the test that he was not telling the truth during the polygraph examination. The government did not elicit the statements that DuBois made during the examination. DuBois continued at trial by asserting that his post-examination confession was untrue and explaining that he made a false confession because investigators put words in his mouth during the lengthy interrogation that had taken place several days before the polygraph.

This testimony does not constitute unfair prejudicial use of testimony related to the results of the polygraph examination. The government's questioning steered clear of introducing the results of the polygraph. Bagola, not the government, first elicited from DuBois on cross-examination that he denied during the polygraph

examination that he stabbed D.S. and T.D. or caused any of their injuries. Bagola's cross-examination then tried to place the examiner's interpretation of his responses before the jury, and the district court properly excluded it. That DuBois confessed was important evidence, but that he confessed after the examiner's statement about "strong reactions" had minimal probative value. The district court was within its discretion to conclude that the danger of confusion and unfair prejudice from injecting the examiner's interpretation of the polygraph substantially outweighed the probative value of the disputed testimony.

Bagola responds that he was not attempting to present evidence of "results," because the question did not call for testimony about whether the examiner found that DuBois was deceptive. But polygraph examinations measure a subject's physiological reactions through sensors attached to the subject and connection to a machine. "Results" are the examiner's interpretation of data recorded by the machine. Testimony that a subject was "strongly reacting," like testimony that a subject was "deceptive," calls for the examiner's interpretation of the physiological responses registered by the subject. The district court permissibly determined that Bagola was pressing a distinction without a difference.

Bagola also contends that the district court's ruling on the question about "strong reactions" violated his rights under the Confrontation Clause of the Sixth Amendment. He did not raise this point during trial, so we review the claim under the plain error standard. *United States v. Johnson*, 688 F.3d 494, 504 (8th Cir. 2012).

The Sixth Amendment guarantees an accused an opportunity for effective cross-examination, but it does not entitle him to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). District courts retain wide latitude to impose reasonable limits on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Bagola argues that the limitation here was unreasonable. He says

-10-

the jury might have evaluated DuBois's credibility differently if it had known that DuBois confessed right after the examiner told him that he reacted strongly when denying the murders. According to Bagola, the examiner's comment would have provided an explanation for DuBois's confession that differed from DuBois's claim that agents "put words in [his] mouth" during the interrogation that preceded the polygraph.

We see no reasonable likelihood that the disputed testimony would have given the jury a significantly different impression of DuBois's credibility. Insofar as the examiner's comment influenced DuBois to confess, a jury may well have viewed the evidence as consistent with DuBois's claim that investigators put words in his mouth and led him to confess when he was really innocent. The district court reasonably perceived a danger, moreover, that the jury would focus instead on purported "results" of the polygraph examination and give excessive weight to an inference drawn from the examiner's statement. *See Scheffer*, 523 U.S. at 313-14 (plurality opinion); *Gianakos*, 415 F.3d at 924-25 & n.7. Bagola had sufficient opportunity to raise doubts in other ways about DuBois's retraction of his confession, so it was not plain error to exclude cross-examination about the examiner's comment.

\*    \*    \*

The judgment of the district court is affirmed.

_____