# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 142

State of North Dakota,                                    Plaintiff and Appellee

v.

Cody Wayne Ritter,                                    Defendant and Appellant

### No. 20230337

Appeal from the District Court of Ransom County, Southeast Judicial District, the Honorable Nicholas D. Thornton, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice.

Fallon M. Kelly, State's Attorney, Lisbon, N.D., for plaintiff and appellee.

Daniel J. Frisk (argued) and Mark A. Schwab (on brief), West Fargo, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]    Cody Wayne Ritter appeals from a criminal judgment entered after a jury convicted him of sexual assault. On appeal, he argues the district court abused its discretion by admitting video evidence of a forensic interview under N.D.R.Ev. 403, because its prejudicial impact substantially outweighed its probative value. He further argues his Sixth Amendment right to confront the witnesses against him was violated because the video was not published during trial and the jurors first viewed the video during deliberation. We reverse the criminal judgment.

I

[¶2]    Ritter's fifteen-year-old stepdaughter ("the minor") alleged she felt inappropriate contact from Ritter. The minor submitted to a forensic interview at the Children's Advocacy Center. A video of the interview, marked at trial as exhibit one, was discussed during a pretrial conference. The interview included information about a separate incident that had occurred in Texas. Defense counsel described the "allegations that Mr. Ritter was kissing the girls on the mouth . . . she also suggests that they were trying to French kiss" in Texas. The district court reserved ruling on the admissibility of the video.

[¶3]    At trial, defense counsel discussed the contents of the video in his opening statement. The State called a detective who testified about the occurrence of the interview and its recording. During cross-examination of the detective, defense counsel questioned the detective about the minor's statements made during the interview. The State called the forensic interviewer, who testified generally about forensic interviews of abused children. She testified she conducted a forensic interview with the minor in this case and it was recorded. During cross-examination of the forensic interviewer, defense counsel questioned the interviewer about the minor's statements made during the interview.

[¶4]    The minor testified about the alleged incident. During cross-examination of the minor, defense counsel questioned her about statements she made during the interview that were inconsistent with the statements she made during her testimony. The minor corrected her testimony to conform with the statements she made during the interview.

[¶5]    During the State's redirect examination of the minor, the State offered the video into evidence. Defense counsel objected, citing Rule 403, N.D.R.Ev., and arguing the video

was prejudicial. After the court requested more specificity, counsel initially stated his objection was not unfair prejudice under Rule 403(a) but confusing the issues under Rule 403(b) in regards to the unrelated incident in Texas. Counsel went on moments later to broaden the objection, stating "the prejudiced value is outweighed by the probative value." The State argued the video was relevant and probative as to the minor's state of mind and also would avoid confusion resulting from defense counsel's repeated references to the video and its content throughout the trial.

[¶6]    The district court explained its ruling in detail:

> With respect to the conduct allegedly occurring in Texas, [defense counsel] specifically elicited testimony about alleged sexual misconduct of his client occurring in Texas. That clearly opens the door if the defense elicits the testimony and then claims the testimony and previous consistent testimony consistent with what he elicited here at trial that that's unduly prejudicial — I believe the door has been opened very wide by asking those questions. And so the Court is going to overrule those objections — or at least with respect to the Texas allegations — and allow Exhibit 1 to come into evidence.
>
> . . . .
>
> But that'll be my ruling for now. I think that's appropriate under the facts and circumstances as they've been presented here. The 403 objection is overruled. In particular because this wasn't brought as a motion in limine or wasn't brought before pretrial, so the Court didn't have the ability to order [the State] to redact certain portions of the video. Clearly, experienced counsel on both — for both parties — could have done that and chose not to. So the Court obviously is under the impression that that evidence should be in front of the jury.
> Clearly, if I would have ruled at the time that that video comes in, and [counsel] wanted to object, he can contemporaneously object, but the way that needs to happen at this point is going to be — during the questions, you can certainly object, and I can rule for the jury whether that objection is sustained or overruled in real time contemporaneously with the display of the video, and we'll proceed that way. If an appropriate jury instruction needs to be fashioned, we can do that to limit its effect, but it'll depend on further rulings of the Court depending on the specific objections.

[¶7]    The district court received the exhibit. After the jury returned, the court informed the jury that a video labeled exhibit one was received into evidence during the recess.

Neither party published any portion of the video for the jury. Neither party discussed the video, or asked the witness any further questions regarding the video.

[¶8] The parties agreed to an additional jury instruction: "If the jury wishes to view Exhibit 1, the jury may send a note to the judge, and arrangements will be made for the jury to view Exhibit 1 video in a manner arranged by the Court." Defense counsel did not object or ask for any further instructions. During jury deliberations, the jury requested to view the video. The district court brought the jury back into the courtroom and played the video recording in its entirety for the jury.

[¶9] The jury convicted Ritter of sexual assault. Ritter appeals.

II

[¶10] Ritter argues the district court abused its discretion by admitting video evidence of the witness's forensic interview under N.D.R.Ev. 403, because its prejudicial impact substantially outweighed its probative value.

[¶11] This Court reviews a district court's evidentiary ruling under an abuse of discretion standard:

> A district court has broad discretion on evidentiary matters, and we will not overturn its admission or exclusion of evidence on appeal unless that discretion has been abused. A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably, or when its decision is not the product of a rational mental process or if it misinterprets or misapplies the law.

*State v. Salou,* 2024 ND 6, ¶ 7, 1 N.W.3d 602 (citation omitted).

[¶12] Ritter argues the video is inadmissible under Rule 403, N.D.R.Ev. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: (a) unfair prejudice [or] (b) confusing the issues." N.D.R.Ev. 403 (a)-(b). Ritter does not argue the evidence is irrelevant.

[¶13] "The concept of 'opening the door' allows the admission of otherwise inadmissible testimony to qualify, explain, or limit testimony or evidence previously admitted." *Haas v. Hudson & Wylie LLP,* 2020 ND 65, ¶ 19, 940 N.W.2d 650 (cleaned up). "[A] trial court is vested with discretion to decide whether a party has opened the door for the admission of otherwise inadmissible evidence." *State v. Hernandez,* 2005 ND 214, ¶ 21, 707 N.W.2d

3

449. Opening the door for the admission of otherwise inadmissible evidence is not unlimited. *Id.* A district court's decision about the extent of an opened door is reviewed under the abuse-of-discretion standard. *Id.*

[¶14] "When the defendant has opened the door, the court must also consider, under N.D.R.Ev. 403, whether the probative value of the evidence is 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]'" *Coppage v. State*, 2013 ND 10, ¶ 19, 826 N.W.2d 320; *see also State v. Hidanovic*, 2008 ND 66, ¶¶ 35-37, 747 N.W.2d 463; *cf. State v. Aabrekke*, 2011 ND 131, ¶ 10, 800 N.W.2d 284 (explaining when evidence of prior crimes, wrongs, or bad acts is admissible under N.D.R.Ev. 404(b), the court must also consider whether the probative value outweighs any prejudicial effect); *State v. Stewart*, 2002 ND 102, ¶ 7, 646 N.W.2d 712 (holding N.D.R.Ev. 609 requires the court determine whether the probative value of evidence of a prior conviction outweighs its prejudicial effect because a criminal defendant faces the risk that juries will use the convictions as evidence of the defendant's propensity to commit crime).

A

[¶15] The doctrines barring a challenge to otherwise inadmissible evidence are known by various names including "waiver," "estoppel," "opening the door," "invited error," "fighting fire with fire," and "curative admissibility." *See* 2 Handbook of Fed. Evid. § 103:4 (9th ed.). Courts and scholars often apply the phrase "opening the door" without precision to describe these separate doctrines. 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5039.1 (2d ed. 2019). For example, courts often use the concept of "opening the door" to describe two different evidentiary concepts—specific contradiction and curative admissibility. *See* Francis A. Gilligan and Edward J. Imwinkelreid, *Bringing the Opening the Door Theory to a Close: The Tendency to Overlook the Specific Contradiction Doctrine in Evidence Law*, 41 Santa Clara L. Rev. 807 (2001) (arguing that those two concepts differ and that courts should not treat them as a single concept at risk of confusing them); *see also* 21 Fed. Prac. & Proc. Evid. § 5039.1 (2d ed.) ("Writers sometimes confuse opening the door with 'curative admissibility'—then apply both as if they were 'estoppel to object.'").

[¶16] In *State v. Jensen*, 282 N.W.2d 55, 68 (N.D. 1979), this Court approved this "doctrine" by "permitting receipt of otherwise incompetent evidence" and acknowledged its other names: "*fighting fire with fire*; or permitting receipt of incompetent evidence when the adversary has *opened the door*; or permitting receipt of incompetent evidence under the

4

doctrine of *curative admissibility*." We have since referred to this doctrine as "rebuttal evidence" or "opening the door." *See State v. Purdy*, 491 N.W.2d 402, 410 (N.D. 1992) (upholding prior conduct evidence under 404(b) because defendant "opened the door" during examination by his counsel); *State v. Flynn*, 479 N.W.2d 477, 480 (N.D. 1992) ("Because Flynn had placed the matter in issue, the State's rebuttal evidence was relevant and the trial court did not err in admitting it."). Relying on the Eighth Circuit, we have explained, "[e]vidence that is otherwise inadmissible, may be admitted if the opposing party opens the door through his testimony and invites any error. The evidence may be used to 'rebut the impression left by the opposing party's own testimony.'" *Coppage*, 2013 ND 10, ¶ 18 (quoting *United States v. Brumfield,* 686 F.3d 960, 964 (8th Cir. 2012)).

[¶17]  The Eighth Circuit explains, "[t]he doctrine of opening the door allows a party to explore otherwise inadmissible evidence on cross-examination when the opposing party has made unfair prejudicial use of related evidence on direct examination." *Nicholson v. Biomet, Inc.,* 46 F.4th 757, 765 (8th Cir. 2022) (citations omitted). "The evidence introduced must be in response to something elicited during the opposing party's evidence. In other words, it must actually rebut the initial testimony." *Id.* (citations omitted). "In theory, the admission of inadmissible evidence allows the injured party to cure the problem and 'clear up the false impression' or to 'clarify or complete an issue opened up by opposing counsel.'" *Valadez v. Watkins Motor Lines, Inc.*, 758 F.3d 975, 981 (8th Cir. 2014) (cleaned up).

[¶18]  "The remedy for improper evidence is not always additional improper evidence. The doctrine of opening the door is more limited than that. Evidence allowed through the open door must rebut something that had been elicited." *Valadez*, 758 F.3d at 981-82 (cleaned up). "The rebuttal evidence offered to cure the error must be commensurate with the magnitude of the error itself, or the extent to which the door was opened. Otherwise, courts risk subverting the doctrine of opening the door into a rule for injection of prejudice." *Id.* at 982 (cleaned up); *see also United States v. Winston*, 447 F.2d 1236, 1240 (D.C. Cir. 1971) (explaining "Opening the door is one thing. But what comes through the door is another. Everything cannot come through the door.").

[¶19]  In summary, "determining whether a defendant opened the door to particular, otherwise inadmissible evidence . . . the inquiry is twofold: whether and to what extent, the evidence . . . said to open the door is incomplete and misleading, and what if any otherwise inadmissible evidence is reasonably necessary to correct the misleading impression." 31A C.J.S. Evidence § 345. Then the district "court must weigh the need for and the value of

this rebuttal evidence, including whether a limiting instruction to the jury would obviate the need for any curative admissibility, against the potential for undue delay, confusion and prejudice." *Id.* Because the district court did not determine the extent the door had been opened, regarding a particular topic, but instead found the door "wide open" and did not then weigh the danger of prejudice or confusion resulting from the video under N.D.R.Ev. 403, the district court misapplied the law.

B

[¶20] The district court found defense counsel "specifically elicited testimony about alleged sexual misconduct of his client occurring in Texas" which "clearly opens the door if the defense elicits the testimony and then claims the testimony and previous consistent testimony consistent with what he elicited here at trial that that's unduly prejudicial[.]"

[¶21] During cross-examination of the minor, defense counsel asked:

> And you think for some reason [Ritter] came over and dry-humped you?
> A. Yes. Because he does like to kiss me on the mouth and grab me on the butt when my mom is around. And then my mom doesn't talk to me for a few hours because of it.
> Q. He kisses you on the mouth and grabs your butt?
> A. Yes.
> Q. When did this occur?
> A. When we were living in Texas.
> Q. Did he do it when you lived in North Dakota?
> A. No. Because I tried my best to just stay far — just stay away.
> Q. I want to be clear, you're alleging he grabbed your butt in Texas?
> A. Yes.

[¶22] Counsel did not object to—or move to strike—the minor's statements about Ritter's attempts to kiss her on the mouth or grab her butt. The minor's testimony did not contradict the statements she made in the video. The district court found "by asking [these] questions" "the door has been opened very wide[.]"

[¶23] An "open door" must be limited. Here, the court found counsel opened the door to the "Texas allegations" by "specifically elicit[ing] testimony about alleged sexual misconduct of his client occurring in Texas." In this case, the testimony presented specific conduct, namely kissing the minor on the mouth and grabbing her butt. Presumably, the court found the door was opened in regards to *that* specific conduct. "Opening the door" requires a topic by topic assessment. *See Valadez*, 758 F.3d at 981-82 ("[A] minor mistake

6

by one party does not give permission to an opposing party to admit any and all otherwise inadmissible evidence that it so desires.").

[¶24]   However, Ritter argues the video contains "numerous allegations of abuse or sexual contact by [Ritter] and others." At trial, Ritter's counsel argued the whole video is inflammatory and prejudicial because it includes multiple allegations of abuse and sexual abuse from multiple individuals. Defense counsel's original objection during the pretrial conference focused on this Texas allegation—kissing on the mouth and touching the minor's butt. Later, during the trial, counsel identified two specific allegations of sexual abuse—one against Ritter in Texas, and another against the minor's brother. The court addressed these two specific allegations regarding sexual abuse in its findings. The court reserved ruling on the issue of the brother, explaining counsel could object contemporaneously. The court found Ritter's questions about the Texas incident opened the door to the video. The court specifically explained it had not reviewed the video.

[¶25]   Our review of the video shows it contains allegations of both physical and sexual abuse by Ritter and other individuals. In the video, the minor discussed several specific instances of alleged sexual contact by Ritter, and others, and other generalized instances of Ritter "kissing her on the mouth and touching her butt." The video contains multiple separate allegations of both physical abuse and sexual contact, some in Texas and some in North Dakota, some by Ritter and some by other individuals. The district court did not assess each of these instances. The district court's finding did not address the instances of physical abuse by Ritter and other individuals. The district court's findings did not address the overall "inflammatory nature" of the video containing multiple instances of physical and sexual abuse by multiple individuals.

[¶26] The district court did not decide whether the video's probative value was substantially outweighed by danger of unfair prejudice or confusion. Instead, the court found Ritter opened the door to the Texas allegation by eliciting testimony from the minor regarding the incident, and allowed the entirety of the video into evidence. Having found the door to be opened, the court must next weigh the probative value against any prejudicial effect under Rule 403, N.D.R.Ev. *Coppage*, 2013 ND 10, ¶ 19. It is clear the court did not weigh the prejudicial impact of the video because the court had not viewed the video.

[¶27]   Prejudice is the cornerstone of the "open the door doctrine," and must be assessed on both sides. *See Valadez,* 758 F.3d at 982. The district court failed to do so here. First, the doctrine allows otherwise inadmissible evidence to be used to "rebut the impression

7

left by the opposing party's own testimony," *Coppage*, 2013 ND 10, ¶ 18, or to clear up a false impression or to clarify or complete an issue opened up by opposing counsel, *Valadez*, 758 F.3d at 981. The minor's testimony conformed to her statement in the video. The video was offered by the State because defense counsel continued to reference the video. The video was not being offered to cure a false impression or remedy prejudice. Ritter had not made "unfair prejudicial use of related evidence [during] examination." *Nicholson*, 46 F.4th at 765. Without any apparent confusion of issues, or a false impression, the probative value of the video, if any, is significantly diminished.

[¶28]   Nor was the danger of prejudice or confusion of admitting the video weighed against its probative value. Specifically, the district court did not view any of the video. No offer of proof was made regarding each instance of alleged misconduct by Ritter, or others, by either party. To weigh one item of evidence relative to another, the court must have adequate knowledge about each item. The danger of unfair prejudice, therefore, could not have been effectively weighed. The district court abused its discretion by failing to weigh the probative value against the likely prejudicial effect of the video, and admitting the entirety of the video into evidence.

### III

[¶29]   To the extent the State argues Ritter invited the error, we disagree. We have explained that statements made during opening argument *may* open the door to admissibility. *See Flynn v. Hurley Enterprises, Inc.*, 2015 ND 58, ¶ 15, 860 N.W.2d 450; *see also State v. Burgard*, 458 N.W.2d 274, 279 (N.D. 1990); *State v. Reinart*, 440 N.W.2d 503, 507 (N.D. 1989); M. Ahlen, *Opening Statements in Jury Trials: What are the Legal Limits*, 71 N.D. L. Rev. 701, 717 (1995). However, promising the jury it will see a video does not open the door to the admissibility of the entirety of the video, nor does it invite later error by the court in admitting it. Furthermore, defense counsel objected to the admittance of the video when it was offered. Therefore, the error was not waived or invited.

### IV

[¶30]   We reviewed the parties' remaining arguments and conclude they are either without merit or not necessary to our decision. The district court abused its discretion by admitting the entirety of the video over Ritter's objection. We reverse the criminal judgment.

[¶31]   Jon J. Jensen, C.J.
          Daniel J. Crothers

Lisa Fair McEvers

Jerod E. Tufte

Douglas A. Bahr