Filed 12/16/24  Greene v. City of Los Angeles CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DENISE GREENE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B322920<br><br>(Los Angeles County Super. Ct. No. 20STCV32549) |

    APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge. Reversed.

    Wohlner Kaplon Cutler Halford Rosenfeld & Levy and Daniel R. Barth for Plaintiff and Appellant.

    Hydee Feldstein Soto, City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Jacobs, Supervising City Attorney, and Brian Cheng, Deputy City Attorney, for Defendant and Respondent.

# INTRODUCTION

Denise Greene sued her employer, the City of Los Angeles, for sexual harassment under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). A jury returned a verdict for the City. Greene appeals from the judgment and the court's subsequent order awarding the City its costs. She argues, among other things, the trial court erred in admitting evidence of her alleged sexual conduct with three coworkers. Because the trial court abused its discretion in admitting evidence of Greene's sexual conduct with the coworkers and the error was prejudicial, we reverse the judgment and the order awarding costs.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *Greene Complains About a Coworker, and the City Investigates*

The City hired Greene as a gardener/caretaker in 2016. Her duties included emptying trash bins, cutting grass, and other gardening and maintenance tasks. In 2017 Greene complained to Theresa Walker in the City's human resources department that a coworker at the Westwood Recreation Center, Scott Martens, called her a "bitch." Walker investigated and received a written statement from Martens. Martens admitted that he called Greene a "bitch," but stated that Greene had shown him pictures of herself naked and wearing lingerie. Martens also said Greene spoke with him about explicit sexual matters. Walker instructed Martens's supervisor to discipline him for using "abusive language in the workplace," and Martens received a notice to

2

correct.  The City transferred Greene to the Baldwin Hills Recreation Center.

> B.    *Greene Complains Another Coworker and a Supervisor Sexually Harassed Her, and the City Investigates Again*

In January 2019 a lead senior gardener told Greene to trim some shrubs.  Greene refused and said she was tired of the senior gardener "riding her all the time."  Greene's supervisor, Leo Floyd, counseled her for using abusive language and put a record of the counseling in her file.  In March 2019 Greene and her union representative met with Walker and asked her to remove the record of counseling from Greene's file.  When Walker declined, Greene said that a coworker, Peter Burrell, had sexually harassed her, that she had complained to Floyd, and that Floyd did not address her complaints.

Walker investigated Greene's complaint.  She interviewed Greene, Burrell, Floyd, the lead senior gardener, and others and prepared a report.  Walker concluded it was "more likely than not" Greene and Burrell "engaged in conversations of a sexual nature that were reciprocal."  Walker "found insufficient evidence Floyd failed to carry out his supervisory responsibility with regard to sexual harassment."  Walker concluded, however, Burrell violated City policy "when he made an inappropriate comment of a sexual nature to [Greene] that was overheard by another employee."

The City suspended Burrell.  The City transferred Greene to another park and, later, to Banning Park.

C.    *Greene Files This Action Against the City*

In 2020 Greene filed this action against the City.  Greene asserted causes of action under FEHA for sexual harassment, sex discrimination, retaliation, and failure to prevent harassment and discrimination.  Greene alleged she was sexually harassed by Martens, Floyd, Burrell, and another coworker, Sylvester Luna.  Greene also alleged Barry Rankins, her supervisor at Banning Park, blamed her for the harassment she experienced at previous work locations.

D.    *The Trial Court Rules on Pretrial Motions*

Before trial Greene filed a motion in limine to exclude Martens's testimony about Greene's sexual conduct with him, to prevent Walker from testifying about Martens's allegations, and to redact references to those allegations in Walker's investigative report.  The trial court denied Greene's motion.

The City filed a motion under Evidence Code section 783 to introduce evidence of Greene's sexual conduct with Rankins and with Francisco Arredondo, Greene's coworker in Baldwin Hills.[1]  The City also filed a motion in limine to exclude expert testimony that stress from Burrell's harassment caused Greene to miscarry and become infertile.  The court granted both of the City's motions.

E.    *A Jury Finds for the City, and the Trial Court Enters Judgment and Awards Costs*

At trial Greene testified Burrell sexually harassed her between July 2017 and March 2019:  Burrell told her "how he

---

[1]    Undesignated statutory references are to the Evidence Code.

4

wanted me to be his woman and how he was in love with me"; pressured her to have sex with him to "pass" her probation; touched her breast; brushed his penis against her; and said, "I need some energy.  Let me suck on your titties."

Greene also testified about an incident where Burrell tried to hit her:  While she was in a truck with Burrell, they argued over who would send Floyd pictures he had requested.  Burrell said, "I'm not your little boyfriend.  I'm not going to keep playing with you. . . .  I will knock the shit out of you."  Greene said, "Pete, I'm not worried about you or . . . what you're going to do to me."  Burrell swung his fist toward her face, and Greene grabbed his fist and screamed.  The next day, Greene suffered a miscarriage.

Greene testified she reported Burrell's harassment to Floyd, who laughed and said he would take care of it.  Greene also testified Floyd sexually harassed her by complimenting her body and saying she looked sexy.  Greene stated that one time Floyd touched her breast while he was trying to open a door.[2]  Greene denied making sexual comments to Martens or Burrell or showing them nude or sexually explicit pictures of herself.

Walker testified about her investigation into Greene's complaint against Burrell:  Walker concluded that Burrell made inappropriate sexual comments to Greene, but that they were not unwanted.  Walker did not find Burrell sexually harassed Greene.

Walker testified that, according to Greene, Burrell called her and said he "needed energy" and "wanted to suck on her titties."  Burrell denied this, but a coworker confirmed Greene's

---

[2]      Floyd denied having sexual conversations with Greene.

account.  The coworker said that she was with Greene while Greene spoke with Burrell on speakerphone, that she heard Burrell's remark, and that she found it inappropriate.

Walker believed Greene showed Burrell "racy photographs."  She also believed Greene's statement Burrell "motioned as if to hit her" when they were in the truck together.

Burrell testified about his relationship with Greene:  He stated that he and Greene were friends and that she talked to him about her family.  The relationship changed one day when Greene showed Burrell photographs of herself, some of her naked and others of her wearing lingerie, and they discussed her breasts and her "private parts."  Greene said, "These titties here will give an old mother fucker like you energy."  After that incident, Burrell and Greene would swear, make sexual remarks, and laugh.

Burrell admitted that, in a later phone conversation, he said he needed "energy" and mentioned Greene's "titties," but he said he was referring to Greene's earlier remark.  He stated he did not know Greene participated in the call on speakerphone.  Burrell testified that Greene suggested she would have sex with him, but that he "wasn't attracted to her like that."

Burrell denied raising his fist to hit Greene.  Burrell explained the incident this way:  After Greene's assignment changed, Floyd asked Burrell to show Greene the water supply at several locations, and Greene was angry because she did not like the new assignment.  Greene did not want to take pictures of the bathrooms and backflow and she asked Burrell to do it.  Burrell told Greene that she needed the pictures to do her assignment, and she said:  "Fuck you.  Take them your God damn self."

Burrell also denied he ever grabbed Greene or rubbed against her.

　　The jury returned a verdict in favor of the City.  The trial court entered judgment on the verdict and awarded the City its costs under FEHA.  Greene timely appealed from the judgment and cost order, and we consolidated the two appeals.

## DISCUSSION

　　A.　　*Applicable Law and Standard of Review*

　　"It is an unlawful employment practice for an employer to 'harass' an employee based on membership in a protected class" (*Bailey v. San Francisco District Attorney's Office* (2024) 16 Cal.5th 611, 626), including "because of . . . sex" (Gov. Code, § 12940, subd. (j)(1)).  "[H]arassment creates a hostile, offensive, oppressive, or intimidating work environment . . . when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being."  (Gov. Code, § 12923, subd. (a).)  "'The harassment must satisfy an objective and a subjective standard.'"  (*Ortiz v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 568, 583; see *Rieger v. Arnold* (2002) 104 Cal.App.4th 451, 459.)  "In contending that the 'subjectively offensive' element was not proven, a defendant 'will assert that a plaintiff consented to the conduct through active participation in it, or was not injured because the plaintiff did not subjectively find it abusive.'"  (*Meeks v. AutoZone, Inc.* (2018) 24 Cal.App.5th 855, 874; see *Rieger*, at p. 461.)

7

Section 1106 limits the evidence the defendant may use to prove the plaintiff consented to the conduct or was not injured by it. Section 1106, subdivision (a), states: "In any civil action alleging conduct which constitutes sexual harassment, sexual assault, or sexual battery, . . . evidence of specific instances of the plaintiff's sexual conduct . . . is not admissible by the defendant in order to prove consent by the plaintiff or the absence of injury to the plaintiff." The rule has several exceptions. First, it does not apply to "evidence of the plaintiff's sexual conduct with the alleged perpetrator." (§ 1106, subd. (b).) Second, if the plaintiff introduces evidence of the plaintiff's sexual conduct, the defendant may rebut it. (§ 1106, subd. (d).) Third, evidence of the plaintiff's sexual conduct may be admissible "to attack the credibility of the plaintiff as provided in Section 783." (§ 1106, subd. (e).) "Sexual conduct" means "'all active or passive behavior (whether statements or actions), that either directly or through reasonable inference establishes a plaintiff's willingness to engage in sexual activity,' including 'racy banter, sexual horseplay, and statements concerning prior, proposed, or planned sexual exploits.'" (*Meeks v. AutoZone, Inc.*, *supra*, 24 Cal.App.5th at p. 874; see *Rieger v. Arnold*, *supra*, 104 Cal.App.4th at p. 462.)

Section 783 prescribes the procedure the court must follow before allowing a defendant to introduce evidence at trial of the plaintiff's sexual conduct to attack credibility, including that the defendant file a written motion accompanied by an affidavit stating an offer of proof and that the court, if the court finds the offer of proof sufficient, order a hearing outside the presence of the jury and allow questioning of the plaintiff about the offer of proof. (§ 783, subd. (c).) If the court finds the evidence is relevant, the court must consider whether it is inadmissible

8

under section 352. (§ 783, subd. (d); see *Doe v. Superior Court* (2023) 15 Cal.5th 40, 68.) Section 783 requires "a broader section 352 inquiry compared with the garden-variety weighing contemplated under that statute in isolation. In such cases the trial court must not simply assess the potential for prejudice to the party against whom the evidence is offered, but also undertake a more probing inquiry by considering whether the discovery or adjudication process is being used to harass, intimidate, or unduly invade the privacy of the complainant." (*Doe*, at p. 70.) Because the Legislature intended sections 1106 and 783 to guard """against unwarranted intrusion into the victim's private life,"" a "'*stronger showing of good cause . . .* must be made to justify inquiry into this topic than is needed for a general examination.'" (*Doe*, at pp. 68-69.)

We review a trial court's rulings on the admissibility of evidence for abuse of discretion. (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 593; *Meeks v. AutoZone, Inc., supra*, 24 Cal.App.5th at p. 861.) "Trial courts ordinarily enjoy broad discretion with respect to the admission and exclusion of evidence in ruling on motions in limine. [Citation.] Nonetheless, that discretion 'is limited by the legal principles applicable to the case.'" (*Ilczyszyn v. Southwest Airlines Co.* (2022) 80 Cal.App.5th 577, 594.) A ruling "'that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

B.      *The Trial Court Prejudicially Erred in Admitting*
        *Evidence of Greene's Sexual Conduct with Martens,*
        *Arredondo, and Rankins*

        1.      *The Trial Court Abused Its Discretion in*
                *Admitting Martens's Testimony About Greene's*
                *Sexual Conduct*

Greene filed a motion in limine to exclude testimony about her sexual conduct with Martens. The City filed a motion under section 783 to admit that evidence to attack Greene's credibility. The City argued the evidence was relevant to show Greene "had a motive or plan to lure male coworkers to engage in sexual conversation or conduct with her . . . and later claim sexual harassment." The court ruled the evidence was admissible to attack Greene's credibility for a different reason: In her complaint Greene alleged Martens sexually harassed her, but before trial she withdrew that claim. The court stated: "The fact that [Greene] made a similar claim with similar facts a year before involving a different man [Martens], . . . and she's not making a claim now against that man, reflects upon her credibility."

At trial Martens testified Greene showed him photographs of herself naked and wearing lingerie. Martens also said Greene described "the size and shape of penis that she liked" and told him that "she liked hard-working white men," that she "had an open marriage," and that "she liked porn."

The court abused its discretion in admitting Martens's testimony. Even if, as the trial court stated, Greene's decision to drop her sexual harassment allegations against Martens was somehow relevant to her credibility, that is not the evidence the

10

jury heard. Instead, rather than allowing the City to introduce evidence Greene made and withdrew similar allegations against Martens, the court allowed Martens to testify in detail about racy pictures Greene showed him and sexually explicit comments she made about her preferences in male genitalia and her interest in pornography. The City did not even argue the jury should disbelieve Greene's claims about Burrell because she had made and withdrawn similar claims about Martens. In its closing argument, counsel for the City argued Greene's sexual conduct with Martens showed she consented to sexual conduct with Burrell—precisely what section 1106, subdivision (a) prohibits: "So was the conduct unwanted? The key feature of sexual harassment. In both cases with Martens and Burrell— Mr. Martens, Mr. Burrell, she initiates the conduct, she shows them lewd photos of herself, she starts talking sexy lewd talk, she laughs and jokes with them when they reciprocate with her, and then when it's convenient and she can make best use of it, she says she was harassed."

The City argues Martens's testimony was admissible under section 1106, subdivision (d), which provides that, if the plaintiff introduces evidence of the plaintiff's sexual conduct, the defendant can cross-examine the plaintiff or other witness and offer rebuttal evidence. The City contends that Greene "put the evidence at issue" by testifying on direct examination she never engaged in sexual conversations with Martens or showed him explicit photographs and that therefore the City could cross-examine Greene and rebut her testimony with Martens's. However, Greene objected to Martens's testimony by filing a motion in limine to exclude it. It was only after the trial court denied her motion and erroneously ruled Martens could testify

11

about Greene's sexual conduct with him that Greene testified she did not engage in sexual conduct with Martens.  Greene was making the best of an adverse ruling; she was not putting her sexual conduct at issue within the meaning of section 1106, subdivision (d).  (Cf. *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212-213 [""An attorney who submits to the authority of an erroneous, adverse ruling after making appropriate objections or motions, does not waive the error in the ruling by proceeding in accordance therewith and endeavoring to make the best of a bad situation for which he was not responsible.""]; *People v. Turner* (1990) 50 Cal.3d 668, 704, fn. 18 ["Given the apparent futility of an effort to exclude the [harmful evidence], however, prudent counsel would be well advised to minimize their 'sting' by eliciting them himself.  Such defensive acts do not waive an objection on appeal."].)

The City also argues Martens's testimony was admissible under section 1106, subdivision (b), because Martens was an "alleged perpetrator."  Because Greene decided not to pursue her causes of action against the City based on Martens's conduct, however, he was not, at trial, an alleged perpetrator.  The City contends that Greene alleged in her complaint Martens sexually harassed her and that it "does not matter that, prior to trial, Greene decided to drop her sexual harassment claim against Martens."[3]  But it did matter.  The reason for the "alleged perpetrator" exception is that, while "evidence of a plaintiff's

---

[3]     In her motion in limine to exclude evidence of her sexual conduct with Martens, Greene stated she "no longer intend[ed] to pursue any theory of liability at trial involving Martens's harassment" and did not "intend to present any evidence of such harassment."

12

prior sexual conduct is generally more 'harassing and intimidating than genuinely probative' [citation], the exception is a legislative recognition that evidence of prior sexual conduct with the perpetrator *is* genuinely probative." (*Rieger v. Arnold, supra*, 104 Cal.App.4th at p. 464.) "Consistent with the legislative intention to allow a defense based on genuinely probative evidence, . . . perpetrators include not only the named defendants but also any other actor whose conduct the plaintiff seeks to ascribe to the employing entity. The employing entity would otherwise be hamstrung with imputed liability against which it could not effectively defend." (*Ibid*.) Because the jury did not hear evidence Martens harassed Greene, he was not an "alleged perpetrator," and section 1106 did not permit the City (the "employing entity") to present evidence of Greene's sexual conduct with Martens.

The City argues that, having accused Martens of sexual harassment in the complaint, Greene "cannot now hide her weak allegations from the jury" and "must play the hand that she herself dealt." The City's playing card analogy is misplaced. The City offers no reason Greene could not narrow her theory of liability by dropping allegations because they turned out to be weak or because they allowed the City to introduce unfavorable evidence of Greene's sexual conduct. To pick up on the City's analogy, parties are allowed to discard cards they are dealt (up to three in five card draw, four if the last card is an ace) and play the new cards. Greene discarded her Martens card before trial. (Cf. Code Civ. Proc., § 581, subd. (c) ["A plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial."].)

13

*Mendez v. Superior Court* (1988) 206 Cal.App.3d 557, disapproved on another ground in *Williams v. Superior Court* (2017) 3 Cal.5th 531, is instructive.  In that case the plaintiff brought an action for sexual assault and battery.  (*Mendez*, at p. 561.)  At her deposition the plaintiff denied having extramarital affairs.  (*Id.* at p. 562.)  The defendant sought discovery of the plaintiff's sexual conduct with persons other than the defendant under Code of Civil Procedure former section 2017, subdivision (d) (now section 2017.220), which required a party to establish "specific facts showing good cause" to obtain discovery "concerning the plaintiff's sexual conduct with individuals other than the alleged perpetrator."[4]  (Code Civ. Proc., former § 2017, subd. (d); see *Mendez*, at p. 565.)  The defendant argued evidence of the plaintiff's extramarital affairs would be "potentially admissible to assail her denial" of affairs at her deposition.  (*Mendez*, at pp. 575-576.)  The court in *Mendez* rejected that argument because, after the deposition, the plaintiff's husband dismissed his claim for loss of consortium.  The court stated: "Assuming, arguendo, that the line of inquiry might have had some relevance on that issue [the plaintiff's denial of having extramarital affairs], that cause of action [loss of consortium] was dropped by the time of the trial court's order herein.  Therefore, any relevancy the information might have had to the cause of

[4]     Code of Civil Procedure former section 2017, subdivision (d), is the discovery analogue to section 1106.  The Legislature enacted section 1106 and Code of Civil Procedure section 2036.1 (the previous version of Code of Civil Procedure section 2017, subdivision (d)) in the same legislation.  (*Mendez v. Superior Court*, *supra*, 206 Cal.App.3d at p. 564; see Stats. 1985, ch. 1328, § 1, p. 4654.)

14

action disappeared with the cause of action." (*Id.* at p. 576.) The same is true here: The relevance of Greene's sexual conduct with Martens disappeared when she abandoned her allegations he sexually harassed her.

Finally, the City argues Greene waived her objection to Martens's testimony because, at a hearing on the City's motion under section 783, counsel for Greene stated Martens could testify about Greene's sexual conduct with him. At that hearing, counsel for Greene argued Martens's statements about Greene in the City's investigative report were hearsay. Counsel stated, however: "The City seems to think that we're trying to exclude evidence of the supposed interaction between Ms. Greene and Mr. Martens. The City is free to call Mr. Martens to testify with respect to that episode." Later in the hearing, however, counsel for Greene argued the evidence of Greene's sexual conduct with Martens was "highly prejudicial" and "fails the [section] 1106 test, in addition to the fact that it's hearsay."

Counsel's statement at the hearing did not waive Greene's consistent objection, in writing and in argument in the trial court, to Martens's testimony about Greene's sexual conduct with him. In her motion in limine Greene argued "evidence of any sexual conduct with respect [to] Martens . . . is expressly barred by Evidence Code Section 1106(a) and not admissible under the exception in subdivision (b)." A "'motion *in limine* to exclude evidence is a sufficient manifestation of objection to protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when

15

the trial judge can determine the evidentiary question in its appropriate context.'" (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950.) Greene's motion in limine satisfied these requirements and preserved her objection to Martens's testimony, notwithstanding her lawyer's improvident comment. (See *Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1112 ["Although statements of counsel 'may be treated as judicial admissions if they were intended to be such or reasonably construed by the court or the other party as such,' such admissions must be clear and unambiguous."]; *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 752 ["an oral statement by counsel in the same action is a binding judicial admission if the statement was an unambiguous concession of a matter then at issue and was not made improvidently or unguardedly"]; *People v. Jackson* (2005) 129 Cal.App.4th 129, 161 ["having vigorously fought a motion to suppress the wiretap evidence at the start of trial it does not seem reasonable [the defendant's] counsel would concede the issue at the close of trial and deliberately throw away a potential winning issue should there be an appeal"].)

> 2. *The Trial Court Abused Its Discretion in Admitting Walker's Testimony, and Portions of Her Report, About Greene's Sexual Conduct with Martens*

In her motion in limine Greene also asked the trial court to redact portions of the City's investigative report that referred to Martens's statements Greene showed him naked photographs and made sexual comments and to prohibit Walker, the report's author, from testifying about the redacted portions. The court

16

ruled the evidence was admissible, not for the reason the City argued (to show Greene had a plan to engage male coworkers in sexual conversations and later claim they harassed her), but because it was relevant to whether the City's investigation was adequate. At trial the court admitted the report without the redactions Greene requested, and Walker testified Martens said Greene showed him "racy photos."

The trial court abused its discretion in admitting this evidence. Contrary to the trial court's statement, evidence of Martens's statements was not relevant to the adequacy of the City's investigation. Walker's report documented her investigation into Greene's claim in 2019 that Burrell harassed her. In that report Walker twice mentioned Martens's claims that Greene made sexual comments and showed him explicit photographs—allegations Martens made in 2017 after Greene accused him of calling her a "bitch." Martens's statements in 2017 had no bearing on the adequacy of Walker's investigation in 2019 into Greene's complaint that Burrell harassed her.

More concerning is that, by admitting the report, the trial court allowed the jury to hear Walker's comment on the similarity between statements by Martens and Burrell about Greene's conduct and to draw precisely the inference section 1106 prohibits—that Greene's sexual conduct with Martens suggested she may have consented to sexual conduct with Burrell. Walker wrote Burrell "claimed [Greene] showed him photos of her in lingerie and said, 'You know you want this right here.' This is concerning because [Burrell's] claim is similar to what Mr. Martens claimed when he complained, in part, that [Greene] was making sexual statements and flashing selfies of her private parts." Walker testified at trial that, when Burrell told her

17

Greene showed him racy pictures, she remembered Martens's similar allegation about Greene. Walker stated: "I don't even think that Burrell and Scott [Martens] know each other, so I thought that was a coincidence." Walker's testimony connecting Martens's statements about Greene with Burrell's, and the portions of her report discussing Martens's statements about Greene's conduct, were inadmissible under section 1106, subdivision (a).

The City argues, as it did for Martens's testimony, evidence of Martens's statements to Walker was admissible under section 1106, subdivision (d), because Greene "opened the door" by calling Walker as a witness, examining her on the topic, and introducing the investigative report into evidence. But as discussed, Greene tried to keep all of this evidence out by filing a motion in limine to redact portions of the report and to exclude Walker's testimony about those portions. Greene did not make the evidence admissible under section 1106, subdivision (d), by introducing the evidence after the trial court erroneously denied her motion. (See *Mary M. v. City of Los Angeles*, *supra*, 54 Cal.3d at pp. 212-213; *People v. Turner*, *supra*, 50 Cal.3d at p. 704, fn. 18; see also *Valadez v. Watkins Motor Lines, Inc.* (8th Cir. 2014) 758 F.3d 975, 981 ["The doctrine of opening the door cannot "'be subverted into a rule for injection of prejudice.'""].) It was the trial court's erroneous ruling that opened the door; Greene merely did her best to control how the evidence came in through the door.

### 3. *The Trial Court Abused Its Discretion in Admitting Evidence of Greene's Sexual Conduct with Arredondo*

The City filed a motion under section 783 to introduce testimony by Arredondo, Greene's coworker in Baldwin Hills, that Greene showed Arredondo risqué photographs of herself "and attempted to goad Mr. Arredondo into supporting her false claim that Mr. Burrell had grabbed her, by stating 'I thought you were my friend.'" The trial court held a hearing under section 783, and counsel for Greene questioned Arredondo. The court granted the City's motion. The court ruled the evidence was relevant to the credibility of Greene's claim Burrell grabbed her, because after Arredondo denied seeing Burrell grab Greene, Greene said, "I thought you were my friend."

Arredondo testified at trial he saw Burrell standing next to Greene and heard Greene scream, "Don't touch me, don't touch me." Greene asked Arredondo, "Did you see that, did you see that?" When Arredondo said, "No, no, I did not see," Greene said, "I know he's your friend, I'm your friend as well" and "I thought you were my friend." Arredondo also testified that on two occasions Greene showed him pictures of herself in a bikini or a bra and asked how she looked, and he said she looked "very pretty" or "very nice."

Like Martens's testimony, Arredondo's testimony Greene showed him pictures of herself was inadmissible under section 1106, subdivision (a). The City argues that the evidence was "relevant to the type of relationship" Greene and Arredondo had and that it went "to Greene's credibility." The City asserts Arredondo's testimony Greene said "I thought you were my friend" was evidence Greene pressured Arredondo to say Burrell

19

grabbed her. But even if Greene pressured Arredondo to lie for her, that she showed Arredondo photographs of herself had nothing to do with pressuring Arredondo to lie. Nothing in the record suggests Greene showed Arredondo the photographs as a (failed) quid pro quo to get Arredondo to take her side over Burrell's on the grabbing incident.

The City again argues Greene "opened the door" to Arredondo's testimony by testifying on redirect she did not show naked pictures of herself to any of her coworkers. But Arredondo, unlike Martens and Burrell, did not testify that Greene showed him "naked photos," only that she showed him photos of herself in a bikini or a bra. And in any event, as discussed, once the court overruled Greene's objection to Arredondo's testimony and (erroneously) granted the City's motion under section 783 to allow him to testify, Greene was entitled to deny she showed him (or anyone else) naked or suggestive pictures of herself.

4.     *The Trial Court Abused Its Discretion in Admitting Evidence of Greene's Sexual Conduct with Rankins*

The City also moved under section 783 to introduce evidence Greene made flirtatious and sexual comments to Rankins, Greene's supervisor in Banning Park. The City argued Rankins's testimony about Greene's comments was "directly relevant" to rebut Greene's claim Rankins's statement to Greene that he wanted her to "conform her behavior to professional standards" was retaliatory. After a hearing under section 783, the court ruled Rankins's testimony was admissible because it could "be used to evaluate [Greene's] credibility," but the court did not explain its reasoning. Rankins testified at trial that

20

Greene flirted with him and that she said he was handsome, "in shape," and more physically attractive than other supervisors.

The trial court abused its discretion in admitting Rankins's testimony under sections 783 and 1106 for the same reasons the court abused its discretion in admitting similar testimony by Martens and Arredondo. The court erred in concluding the testimony was relevant to Greene's credibility. Indeed, in its respondent's brief the City, rather than explaining why Rankins's testimony was "relevant to Greene's credibility," argues Rankins's testimony was admissible under section 1106, subdivision (b), because Rankins was an alleged perpetrator. But he wasn't. Greene alleged Rankins blamed her for being sexually harassed; she did not allege Rankins sexually harassed her. As discussed, section 1106, subdivision (b), allows a defendant to present evidence of a plaintiff's prior sexual conduct with an alleged perpetrator because such evidence is probative on whether the plaintiff consented to the perpetrator's conduct. (See *Rieger v. Arnold, supra,* 104 Cal.App.4th at p. 464.) Because Greene did not allege Rankins sexually harassed her, her sexual conduct with him was inadmissible under section 1106, subdivision (a).

> 5. *The Trial Court's Errors Were Not Harmless*

"'Claims of evidentiary error under California law are reviewed for prejudice applying the "miscarriage of justice" or "reasonably probable" harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836.'" (*Meeks v. AutoZone, Inc., supra,* 24 Cal.App.5th at p. 877.) An "erroneous evidentiary ruling requires reversal only if "'there is a reasonable probability that a result more favorable to the appealing party would have

21

been reached in the absence of the error.”’”  (*D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 210, 231; see *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447.)

Here, it was reasonably probable Greene would have obtained a more favorable result had the trial court not erred in admitting evidence of Greene’s sexual conduct with Martens, Arredondo, and Rankins.  Burrell admitted he had sexual conversations with Greene, but claimed they were mutual.  Therefore, the key issue in the trial was whether Greene consented to having sexual conversations with Burrell.  Absent the evidence of Greene’s sexual conduct with Martens, Arredondo, and Rankins, it would have been Greene’s word against Burrell’s.  The jury would have had to decide whether it believed Greene’s testimony Burrell pressured her to have sex with him to pass her probation, or Burrell’s testimony Greene talked about having sex with him and showed her naked photographs of herself.  The erroneously admitted testimony of Martens and Arredondo, who said Greene also showed them risqué photographs of herself, and of Rankins, who said Greene flirted with him, buttressed (times three) Burrell’s version of events.

The City relied on the testimony of Martens, Arredondo, and Rankins to argue Greene consented to Burrell’s conduct.  In closing argument, counsel for the City argued Greene had a “pattern” she followed with Martens and Burrell of initiating sexual conversation, showing them “lewd photos of herself,” and laughing and joking with them when they reciprocated.  Counsel asked the jury, “Is it a coincidence that the plaintiff shows pictures like this of herself to multiple people?”

Not only was the evidence of Greene's sexual conduct with Martens, Arredondo, and Rankins inadmissible to show consent, it was also unduly prejudicial under section 783, subdivision (d), and section 352. Evidence Greene showed male coworkers naked pictures of herself and described her sexual preferences in graphic detail was the very kind of evidence that "uniquely tends to evoke an emotional bias against [a party] as an individual." (*Donlen v. Ford Motor Co.* (2013) 217 Cal.App.4th 138, 150, internal quotations omitted; see *Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1008.) Because it is reasonably probable Greene would have obtained a more favorable result had the trial court excluded evidence of Greene's sexual conversations and conduct with Martens, Arredondo, and Rankins, the trial court's error in admitting that evidence was not harmless. (See *Meeks v. AutoZone, Inc.*, *supra*, 24 Cal.App.5th at pp. 877-878 [trial court's evidentiary errors, including the court's decision to allow the defendant to publish a photograph of the plaintiff's tattoo to the jury, were prejudicial]; *Winfred D. v. Michelin North America, Inc.* (2008) 165 Cal.App.4th 1011, 1040 [in a product defect case, the trial court's error in admitting irrelevant evidence of the plaintiff's extramarital affairs was prejudicial].)[5]

---

[5] Because we conclude the trial court prejudicially erred in admitting evidence of Greene's sexual conduct with Martens, Arredondo, and Rankins, we do not decide whether the court abused its discretion in excluding expert testimony that stress from the sexual harassment caused Greene to miscarry and become infertile.

C.    *The Order Awarding Costs Must Be Reversed*

After finding Greene's FEHA causes of action were "objectively without foundation and were groundless, frivolous and unreasonable," the trial court awarded the City costs as a prevailing party under FEHA.  Because we reverse the judgment on which the award of costs was based, we also reverse the order awarding the City costs.  (See *Rose v. County of San Benito* (2022) 77 Cal.App.5th 688, 728 [an "'order awarding costs falls with a reversal of the judgment on which it is based'"]; *Bevis v. Terrace View Partners, LP* (2019) 33 Cal.App.5th 230, 263 [reversal of the judgment compels reversal of the award of fees and costs to prevailing party based on the judgment].)

## DISPOSITION

The judgment and the order awarding costs are reversed. Greene is to recover her costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.

24